529 So.2d 94 (1988)
STATE of Louisiana
v.
Ronald WATSON.
No. KA-7377.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 1988.
*95 Harry Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans, for appellee.
Dwight Doskey, O.I.D.P., New Orleans, for appellant.
Before GULOTTA, C.J., and GARRISON and PLOTKIN, JJ.
GULOTTA, Chief Judge.
Ronald Watson appeals his convictions on two counts of armed robbery and one count of aggravated rape. He raises four assignments of error concerning jury selection, statutory overbreadth, jury instructions, and admissibility of evidence. We affirm.
On May 16, 1986, three women were walking to a lounge on Claiborne Avenue in New Orleans when they were accosted by a group of men, one of whom had a gun. After the victims unsuccessfully attempted to run away, one woman heard a gunshot and was subsequently robbed of her jewelry and purse. She managed to flee the scene, however, and seek help. Two men then forced the remaining two women into an alley. Both victims were robbed of their valuables. One man raped one victim while his companion held a gun to the head of other woman and forced her to begin performing fellatio on him.
After observing the occurrence and encountering the first robbery victim, the owner of the nearby lounge and a police officer working a private detail at the bar went to the alley to investigate. The officer saw the rape in progress and gave *96 chase to the attacker, who was ultimately arrested at a nearby service station by another policeman called to the scene. The arrested man, Ronald Watson, was identified as the rapist by the two women and the off duty officer. Another suspect, Sean Lawson, was also arrested in the vicinity and identified as the second attacker.
Watson and Lawson were each charged by grand jury indictment with two counts of armed robbery and one count of aggravated rape. Lawson was also indicted for attempted crime against nature and another count of aggravated rape. After trial, the jury found Watson guilty as charged on all three counts, but deadlocked on the charges against Lawson, who subsequently pled guilty to one count of aggravated rape and crime against nature.
Watson was sentenced to concurrent fifty year terms on each armed robbery count and to life imprisonment for the aggravated rape. All sentences were to be served without benefit of parole, probation, or suspension of sentence. Watson alone has appealed.

PEREMPTORY CHALLENGES
In his first assignment of error, Watson contends that the trial judge should have severed his case from Lawson's in order to preserve his statutory right to exercise peremptory challenges during jury selection. Watson argues that he was deprived of this right at trial when Lawson peremptorily rejected jurors who were acceptable to Watson.
An accused's right to excuse a juror for cause is limited; it is the right to exclude prospective jurors, not to demand that certain individuals acceptable to him shall serve on the jury. State v. Smith, 470 So.2d 128 (La.App. 4th Cir.1985), reversed on other grounds, 491 So.2d 641 (La.1986); State v. Thompson, 495 So.2d 328 (La.App. 4th Cir.1986). Although a defendant may lose a greater number of acceptable jurors because of his co-defendant's peremptory challenges during voir dire at a joint trial, he is only entitled to a severance when his defensive position is so antagnostic to his co-defendant's that it is advantageous for him to have jurors serve who are opposed to the co-defendant. State v. Smith, supra.
In the instant case, Watson only had the right to reject jurors by exercising his peremptory challenges; he did not have a vested right to shield certain jurors acceptable to him from peremptory challenge by his co-defendant. Watson concedes in his brief that his case does not meet the standard for severance based on antagnostic defenses. Indeed, Watson and Lawson both advanced independent alibi defenses, did not accuse each other of the crime, and even denied knowing each other. Under these circumstances, the trial judge properly denied Watson's motion for severance despite the joint trial's effect on jury selection.

STATUTORY OVERBREADTH
Defendant next argues that the trial court erred in denying his motion to quash LSA-R.S. 14:42(A)(5) of the aggravated rape statute, which provides as follows:
§ 42.(A). Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * * *
(5) When two or more offenders participate in the act.
According to defendant, this portion of the statute is unconstitutionally overbroad in that it criminalizes the activity of "group sex" by creating a conclusive presumption that an act of sexual intercourse is without the consent of the victim when more than two people are participating in the act. Watson argues that by instructing the jury in the literal wording of the statute, the trial judge effectively relieved the State of its burden of proving lack of consent. We disagree. The aggravated rape statute clearly defines the crime as a "rape" committed under specified circumstances. In accordance with the statutory definition, the trial *97 judge instructed the jury, in pertinent part, as follows:
"As to an alleged aggravated rape that's committed with two or more offenders participating, such a rape may involve both parties committing the actual physical act of intercourse without the consent of the victim, or by merely having one of the parties physically assist the other in the commission of the act of intercourse without the consent of the victim. If you find that the alleged victim was raped and more than one person participated in the alleged rape of the alleged victim, you will be justified in finding the defendant guilty of aggravated rape if you find that the defendant was in fact one of the multiple participants, the offenders who participated in that rape with the alleged victim." [Emphasis ours].
Thus, in order to convict Watson, the State had the burden of proving that he raped the victim, not simply that group sex occurred. The evidence shows that Watson and Lawson dragged the two female victims into an alley where Lawson held a gun to one victim's head while Watson engaged in non-consensual sexual intercourse with the second victim. The State clearly established beyond a reasonable doubt that the victim was raped and that more than one person participated in the crime. Under these circumstances, the sanctions of LSA-R.S. 14:42(A)(5) for aggravated rape clearly apply.
Furthermore, it is generally inappropriate to invalidate a statute on the grounds of overbreadth when it affects conduct rather than speech, especially where the conduct at issue is harmful and controlled by criminal laws. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); State v. Neal, 500 So. 2d 374 (La.1987). The aggravated rape statute as written and applied to the facts of the instant case does not infringe upon any constitutionally protected activity.

JURY INSTRUCTIONS
In his third assignment of error, defendant argues that the trial judge erroneously charged the jury concerning LSA-R.S. 14:42(A)(3) of the aggravated rape statute, which defines the crime as a rape deemed to have been committed without the lawful consent of a victim who was prevented from resisting because the offender was armed with a dangerous weapon. According to Watson, there was no testimony that he possessed a gun or knew that the second man allegedly involved was armed. He argues further that the trial judge failed to explain that the State was required to prove that he was a principal in all respects of the crime and guilty of all the elements of the offense. We reject this argument.
The trial judge's charges to the jury sufficiently explained the State's burden of proof and the law of principals. The judge read the definition of aggravated rape and explained how the use of a dangerous weapon differentiates this crime from forcible rape. His instructions tracked the language of LSA-R.S. 14:24, which deals with principals, by stating that all persons who are concerned in the commission of crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are considered principals and may be held responsible for the crime if found guilty. Furthermore, the judge specifically explained that the crime must be proved as to each defendant:
"However, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of that crime, depending on the mental element that is proved at trial. That is, the state of mind as to each defendant if a defendant is found to be guilty under the theory of principals, must be proven that he had the desire to have the crime committed, he was aware that the crime was being committed and either aided and abetted someone else in committing it or counseled and procured someone else to commit it or he actually committed it himself or assisted someone else in committing it. An individual may only be convicted as a principal for those crimes for which he has personally had *98 the requisite mental state, the requisite mental knowledge, the requisite mental intent. Proof of one person's intent of course is never proof of another person's intent."
These charges correctly stated the law and adequately explained the State's burden of proof. The evidence established that one perpetrator carried a gun from the beginning of the encounter with the women, that a gunshot was heard, that both perpetrators forced the women into the alley, and that a gun was held to one victim's head while the women were sexually attacked. In light of this evidence, the jury could have reasonably concluded that Watson knew that Lawson was using a gun in the course of the crime and thereby aiding him in committing the aggravated rape.
In so holding, we distinguish State v. Smith, 450 So.2d 714 (La.App. 4th Cir. 1984), cited by defendant. In Smith, one defendant pointed his finger in his pocket at a store clerk and demanded money, while his co-defendant armed himself on impulse with a hammer found in the store and helped him to take the money. This court reduced the armed robbery conviction of the unarmed defendant to the lesser offense of simple robbery because there was no evidence that he had known of the hammer before his co-defendant saw it and decided to use it in the robbery. In the instant case, however, the evidence supports a conclusion that Watson knew of the existence of the weapon before and during the rape.
Accordingly, this assignment lacks merit.

ADMISSIBILITY OF EVIDENCE
We further reject defendant's contention that the trial court erred in allowing the State to cross examine his mother concerning her alleged attempt to compensate the victims for their stolen jewelry after her son was arrested. According to Watson, this testimony was prejudicial to him because it suggested his mother knew or presumed that he was guilty of the crime charged.
As the State argues in brief, the purpose of questioning Mrs. Watson about her alleged offer of restitution was to impeach her direct testimony by showing her bias in favor of her son. The State did not elicit the testimony to impute guilt to defendant Watson or to show that he had directly attempted to influence the witnesses. Furthermore, even assuming error occurred, it was harmless. The two victims and the police officer who witnessed the crime positively identified Watson as the rapist. Watson was in possession of the victim's jewelry when arrested. In light of this overwhelming incriminating evidence, the jury would have found him guilty regardless of any error concerning his mother's testimony.
Accordingly, the convictions and sentences are affirmed.
AFFIRMED.