721 So.2d 542 (1998)
STATE of Louisiana, Plaintiff,
v.
Robert Xavier CAYTON, Defendant-Appellant.
No. 98-100.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
*543 Charles F. Wagner, DA, James M. Buck, Alexandria, for State.
Noland James Hammond, Alexandria, for Robert Xavier Cayton.
Before WOODARD, PETERS and GREMILLION, JJ.
GREMILLION, Judge.
The defendant, Robert Cayton, was charged with armed robbery of a Popeye's Fried Chicken restaurant in Alexandria. He was subsequently convicted following a jury trial of the responsive verdict of first degree robbery. Following the denial of his Motion for New Trial, the trial court sentenced Defendant to serve five years at hard labor, without benefit of parole, probation, or suspended sentence. Defendant now appeals asserting two assignments of error. For the following reasons, we affirm.

FACTS
On December 16, 1996, two men, Paul Lacour and Justin Stewart, entered the unlocked rear door of the Popeye's restaurant on MacArthur Drive in Alexandria, and took the day's receipts at gunpoint.

ASSIGNMENT OF ERROR NUMBER ONE
In Defendant's first assignment of error, he asserts the verdict of first degree robbery was in error. Instead, he claims that he should have been acquitted, or alternatively, found guilty of a lesser included offense. In other words, he contends that the evidence was insufficient to find him guilty of first degree robbery.
In order for the State to obtain a conviction, it must prove the elements of the crime charged beyond a reasonable doubt. La.R.S. 14:64.1(A) defines first degree robbery as follows:
[T]he taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
Principals is defined in La.R.S. 14:24 as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
The State may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. State v. Smith, 513 So.2d 438 (La.App. 2 Cir.1987); La.R.S. 14:24. Under this theory, the defendant need not actually take anything to be found guilty of the crime. Also, a defendant convicted as a principal need not have personally held a weapon to be guilty of armed robbery. State v. Dominick, 354 So.2d 1316 (La.1978). A person, who aids and abets another in a crime, is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).
Our law provides that the critical inquiry in robbery cases involving principals is whether or not the alleged principal had knowledge that the crime was going to take place. For example, in Smith, 513 So.2d 438, the Second Circuit affirmed the defendant's conviction for armed robbery holding that he could be convicted as a principal to armed *544 robbery, or to a lesser included offense, based on the fact that he stood by during two armed robberies because the jury could infer that he intended to aid and abet by acting as a lookout.
Likewise, in State v. Watson, 529 So.2d 94 (La.App. 4 Cir.1988), writ denied, 535 So.2d 740 (La.1989), the defendant was convicted of armed robbery and aggravated rape. The evidence established that the defendant's accomplice carried a gun from the beginning of the encounter with the two female victims, that both individuals forced the women into an alley where they were robbed, and the gun was held to one victim's head by the accomplice who sexually attacked the women. The court held that the jury could have reasonably concluded that the defendant knew his accomplice was using a gun in the course of the crime and, thereby, aided him in committing the rape. The court said that its conclusion was based on the finding that the defendant knew of the existence of the weapon before and during the rape.
Those persons who knowingly participate in the planning or execution of the crime are principals. State v. Pierre, 93-0893 (La.2/3/94); 631 So.2d 427. When a defendant admits his presence at a robbery and never argues that he was coerced by his co-perpetrators to commit a crime, this amounts to a very strong inference of intent. State v. Corkern, 461 So.2d 1238 (La.App. 1 Cir.1984). Further, the State must prove that Defendant's participation was sufficient to convict him as a principal. Knowledge that a crime will be, or has been committed, is insufficient by itself.
In this case, there was ample evidence to show that Defendant had knowledge that the robbers had guns and intended to rob the store. In addition, there was evidence to prove that Defendant, in fact, opened the door for the robbers, after he knew they were coming. Darrick Gibson testified that, on the day of the robbery, he worked with Defendant, who told him that "some of his friends had been up there and was coming up there." According to Gibson, Defendant said that the men were going to bring guns, but never actually told him that the men intended to "rob" the restaurant. Gibson further testified that he never told anyone because he thought Defendant was joking.
One of the co-defendants in the robbery, Lacour, testified that he and Defendant actually planned the robbery while riding around in Defendant's car about a week before the robbery. Lacour testified that Defendant told him about the plan to leave the back door of the restaurant unlocked around closing time and where the money would be while it was being counted. He also testified that he and the other co-defendant, Stewart, each gave Defendant fifty dollars for his help in the robbery.
Defendant testified that Lacour spoke with him about his plans to commit some robberies a week before the robbery. He said Lacour asked him about his work shift, and told Defendant that he needed money for Christmas. Defendant said that Lacour and Stewart came to the Popeye's restaurant the day of the robbery and asked the manager, Kim Shaffette, if they could see Defendant. According to Defendant, when he came out to see them, they asked him about closing time and who the manager was. Defendant testified that he later told Gibson that two men had come to the Popeye's and told him to watch the back door. He claims that he received a phone call from Lacour later in his shift, asking him if they could use his car for the robbery; and he responded by saying "no." He said that he unlocked the back door shortly before closing to let another employee take out the trash. He further testified that soon thereafter Lacour and Stewart came in through the back door and told the employees (including the Defendant) to get on the floor. Defendant said that Lacour held a gun to Shaffette's head and told her to give him all the money. Shaffette testified that the robbers took approximately eighteen hundred dollars.
Defendant argues that he only talked to Lacour about Lacour's intent to rob the Popeye's. Specifically, he asserts that the mere act of talking with an acquaintance about a possible robbery is not enough to convict him of participating in that robbery. Additionally, Defendant argues that since he never received money from the robbery, and did nothing to help the robbers, he should not be *545 held accountable as a principal to a first degree robbery. However, a rational trier of fact could have found Defendant had knowledge of the armed robbery and, instead of telling the police or the manager, kept it to himself. Furthermore, as in Watson, 529 So.2d 94, the evidence is sufficient to prove Defendant aided the two gunmen in the commission of the robbery. There was sufficient evidence for the jury to believe that he gave the two robbers information about the restaurant, that he unlocked the back door to assist the co-defendants, and that he was later compensated for his involvement. Although Defendant did not actually participate in pointing the gun at the manager's face and taking the money, he had knowledge of the crime and of the intent of the two gunmen to be armed and, thus, when the evidence is viewed in the light most favorable to the prosecution, it is sufficient to prove that the Defendant was guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). Thus, Defendant's first assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In what is presumably Defendant's second assignment of error, he asserts that the trial court erred when it refused to permit the introduction of other crimes evidence of Lacour to attack his credibility. While we are unable to locate where Defendant briefed this assignment of error, we shall address it anyway. It seems Defendant takes issue with the trial court's ruling in which he was not allowed to probe the area of Lacour's other convictions and arrests. Initially, we note that La.Code Evid. art 609.1(B) allows that credibility may be attacked only by the witness' convictions, "and no inquiry is permitted into matters for which there has only been an arrest...." At the time of the trial of this matter, Lacour had been convicted of the armed robbery in the instant matter and a similar armed robbery of a McDonald's restaurant. He had also been arrested for a subsequent armed robbery while he was out of jail on bond for the present offense. In a pretrial motion, the trial court ordered that if Lacour was called as a witness in this matter, Defendant would be allowed to ask him questions concerning any pending charges against him. At trial, Defendant was allowed to cross-examine Lacour regarding not only his convictions for the armed robberies in this case and the McDonald's case, but also the fact that he had been arrested for the subsequent armed robbery. Further, the trial court properly allowed Defendant to cross-examine Lacour regarding the fact that he had received a plea agreement in exchange for his testimony in the case against Defendant and the extent of that plea bargain.
We find that the trial court did not refuse to allow Defendant to attack the credibility of Lacour by probing the prior convictions, prior arrests, and plea bargain to the extent he desired, and, if any error was made by the trial court, it was in Defendant's favor. However, even assuming the trial court did refuse or limit Lacour's testimony, Louisiana law still would not provide a remedy to the Defendant. We note that the supreme court has said that "a witness's `hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest.' A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct." State v. Vale, 95-1230, p. 4 (La.1/26/96); 666 So.2d 1070, 1072 (citations omitted). However, this court has said that confrontational errors are subject to the harmless error standard. State v. Boswell, 96-801 (La.App. 3 Cir. 2/12/97); 689 So.2d 627. Specifically, this court said:
The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Factors to be considered by the reviewing court include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the *546 extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Id. at p. 4, 630; quoting State v. Wille, 559 So.2d 1321 (La.1990), appeal after remand on other grounds, 595 So.2d 1149 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992).
In the present case, Lacour's testimony of Defendant's knowledge of the robbery and the guns was corroborated by several witnesses, including Defendant himself. Lacour was examined specifically about his incentive for testifying against Defendant. Finally, even without Lacour's testimony, Gibson's testimony that Defendant told him of the planned armed robbery of the Popeye's was sufficient to convict him. In State v. Hongo, 625 So.2d 610 (La.App. 3 Cir.1993), writ denied, 93-2774 (La.1/13/94); 631 So.2d 1163, we held that the factfinder may accept or reject the testimony of any witness. Additionally, the fact that the record shows evidence which conflicts with the accepted testimony does not make the accepted testimony insufficient. Id. Thus, because Lacour's testimony of Defendant's knowledge of the robbery and the guns was substantiated by other witness testimony, any confrontational error (and we have found none) would be harmless. Therefore, this assignment of error is without merit.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent. Although the trial court informed Defendant he had three years from the date his sentence became final to file post-conviction relief, the trial court improperly informed him that his sentence would become final five days after the date of sentencing. According to La.Code Crim.P. art. 930.8, an application for post-conviction relief must be filed within three years from the date the defendant's judgment of conviction and sentence becomes final under the provisions of Article 914 or 922. Defendant's sentence does not become final five days after the date of sentencing if he timely files an appeal within the five days after the rendition of the judgment or ruling from which the appeal is taken. La.Code Crim.P. art. 914. In this case, Defendant timely filed his motion for appeal, therefore, the provisions of La.Code Crim.P. art. 922 apply. Accordingly, the trial court is directed to inform Defendant of the correct provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings. See State v. Eason, 624 So.2d 934 (La.App. 2 Cir.1993).

CONCLUSION
We find that Defendant's assignments of error are without merit and affirm his conviction and sentence. The trial court is directed to inform Defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and filing written proof that Defendant received the notice in the record of the proceedings.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.