STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0470

STATE OF LOUISIANA

VERSUS

PATRICK JAMES KRAEMER

Judgment Rendered: SEP 2 7 2019

* * * * * * *

On Appeal from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 597061-1

Honorable Scott Gardner, Judge Presiding

* * * * * * *

Warren L. Montgomery                    Attorneys for Appellee,
District Attorney                       State of Louisiana
Matthew Caplan
Assistant District Attorney
Covington, Louisiana


Bertha M. Hillman                       Attorney for Defendant/Appellant,
Covington, Louisiana                    Patrick James Kraemer



* * * * * * *

**BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.**

Higginbotham, J. agrees in part and dissents
in part and assigns reasons.

**PENZATO, J.**

The defendant, Patrick James Kraemer, was charged by bill of information with three counts of theft of a firearm, violations of La. R.S. 14:67.15. He pled not guilty. Following a jury trial, he was found guilty as charged on all counts. On each count, he was sentenced to ten years at hard labor without benefit of parole, probation, or suspension of sentence and "a single $1000[.00] fine." Thereafter, the State filed a habitual offender bill of information against the defendant.[1] The defendant admitted to the allegations in the habitual offender bill. The court adjudged him a second-felony habitual offender on count I, vacated the sentence previously imposed, and resentenced him to twelve years at hard labor without benefit of probation, parole, or suspension of sentence on count I. The court also ordered that the sentences on all three counts be served concurrently. He now appeals, contending: (1) the trial court erred in denying a request for a special jury charge; and (2) the evidence was insufficient to support the convictions. For the following reasons, we affirm the convictions, the habitual offender adjudication and sentence on count I, amend the sentences on counts II and III, and affirm the sentences on counts II and III as amended.

## FACTS

On October 3, 2017, Carl Muir reported that someone had stolen three of his firearms. Hilda Kraemer,[2] the defendant's grandmother, had stored the guns in her home for Muir when he worked out-of-state. The defendant lived in Hilda's home. In 2016, he had taken four firearms, including one of the same firearms involved in the instant offenses, and pawned them. In regard to the instant offenses, Hilda testified Emily Sipos told her the defendant stole the guns, and she sold them to her

---

[1] The predicate offense was set forth as the defendant's February 13, 2017 conviction under 22nd Judicial District Court Docket No. 582263 for illegal possession of stolen firearms.

[2] We will refer to Hilda Kraemer as "Hilda" to avoid confusion with the defendant.

drug dealer. Hilda indicated that after the 2016 incident, she told the defendant she had returned the guns to Muir.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number two, the defendant argues the evidence was insufficient to support the convictions because Sipos was a drug addict and liar who took the guns and pled guilty to their theft. On appeal, the defendant acknowledges that he admitted taking Sipos to New Orleans to sell the guns in a recorded statement, but he denied stealing the guns. Lastly, the defendant argues he was not guilty as a principal to the theft of the guns because he "only participated in 'transportation and facilitation' after the taking." In cases such as this one, where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence, before discussing the other issues raised on appeal. When the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992); *State v. Smith*, 2003-0917 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 798. Accordingly, we will first address the defendant's second assignment of error, which challenges the sufficiency of the State's evidence.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also La. C.Cr.P. art. 821(B); *State v. Mussall*, 523 So.2d 1305, 1308-09

3

(La. 1988). The *Jackson* standard, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. *State v. Watts*, 2014-0429 (La. App. 1st Cir. 11/21/14), 168 So.3d 441, 444, writ denied, 2015-0146 (La. 11/20/15), 180 So.3d 315.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. The facts then established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *Watts*, 168 So.3d at 444.

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. However, the defendant's mere presence at the scene is not enough to "concern" him in the crime. Only those persons who knowingly participate in the planning or execution of a crime may be said to be "concerned" in its commission, thus making them liable as principals. A principal may be connected only to those crimes for which he has the requisite mental state. *State v. Neal*, 2000-0674 (La. 6/29/01), 796 So.2d 649, 659, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). However, "[i]t is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention." *State v. Anderson*, 97-1301 (La. 2/6/98), 707 So.2d 1223, 1225 (per curiam) quoting 2 W. LaFave, A. Scott,

4

Substantive Criminal Law, § 6.7, p. 138 (West 1996); *State v. Clay*, 2011-1974 (La. App. 1st Cir. 5/3/12), 2012 WL 1564626, at *2, writ denied, 2013-0287 (La. 6/14/13), 118 So.3d 1084.

Louisiana Revised Statutes 14:67.15, in pertinent part, provides:

A. Theft of a firearm is the misappropriation or taking of a firearm which belongs to another, either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of the firearm is essential.

B. For purposes of this Section, "firearm" means a shotgun or rifle, or a pistol, revolver, or other handgun.

Sipos testified at trial that she suffered from drug addiction, including addiction to heroin, since she was approximately thirteen years old.[3] She first met the defendant in 2017 at a drug treatment center. The defendant was at the center to receive drug-court-ordered intensive outpatient treatment. Sipos had a mental health appointment at the center. They had a brief romantic relationship.

In describing how she came to reconnect with the defendant, Sipos testified she was living with her mother, but they "weren't getting along." She left and moved in with a man named Brian in Algiers. While living with Brian, she began using heroin again, and Brian became abusive. She used Facebook to ask for help, and the defendant offered to let her stay with him at Hilda's house in Slidell. According to Sipos, the defendant stated he had a gun with him when he came to pick her up.

Sipos and the defendant then went to the Dragon's Den (a New Orleans club) to meet her drug dealer, "Izzy." Sipos wanted to purchase Suboxone to help with heroin withdrawal so she would not be sick around the defendant's family. According to Sipos, the defendant asked Izzy if he would like to purchase a gun. Izzy agreed and paid the defendant approximately $300.00 for the gun the defendant was carrying.

---

[3] Sipos testified on November 13, 2018. In her recorded interview, she gave her date of birth as October 28, 1984.

5

Two to three weeks after arriving at Hilda's home, Sipos needed more Suboxone. She testified the defendant knew someone who had Neurontin (another drug useful for drug detoxification) and Suboxone and agreed to get her some of the drugs. The defendant left his son with Sipos. The defendant was only supposed to be gone an hour, but stayed out all night.

The next day was the defendant's brother's wedding. When the defendant returned home that day, he and Sipos argued over his staying out all night. According to Sipos, the defendant told her he wanted her to leave. Sipos also claimed Hilda told her, "Look, you can't stay here obviously. Y'all are fighting. It's not good." Sipos became angry when Hilda defended the defendant and told her, "You think [the defendant] is so perfect. That's why he's selling guns to get me drugs." Hilda asked, "What guns?" and Sipos replied, "His guns. He is selling guns to get me drugs."

Hilda questioned Sipos concerning the guns and, according to Sipos, only then did Sipos realize the guns did not belong to the defendant. Sipos claimed she had repeatedly asked the defendant if the guns he sold were his guns and if he "[had] papers on them," and he convinced her they were his guns. Sipos testified that after arriving at Hilda's home, she kept in contact with Izzy to get Suboxone, and he asked if the defendant had more guns. She claimed she asked the defendant if he had more guns, and he answered affirmatively. The defendant and Izzy discussed the price for the guns on the phone and, "[the defendant] went [into] the house, came out with the guns, put them in the truck, and [the defendant and Sipos] went to New Orleans."

Sipos testified she and the defendant drove to Izzy's apartment in Metairie and exchanged the guns for drugs and approximately $600.00. According to Sipos, Izzy repeatedly asked for papers for the guns, and the defendant told him he (the defendant) would eventually find the papers. Sipos claimed she did not know the guns were stolen. She claimed she only pled guilty in the matter to avoid being

6

charged as a habitual offender because she had a prior conviction for third offense driving while intoxicated. She was incarcerated on October 25, 2017.

The State played a November 1, 2017 recorded interview of the defendant at trial. The defendant conceded he had taken the guns "to get money" in an earlier incident. In regard to the instant offenses, however, he initially claimed that after transporting Sipos and her large purse to her drug dealer, he caught her "about to shoot up heroin" in the bathroom, told her she had to leave, and the next day, discovered the guns were missing. The defendant speculated Sipos had taken the guns while he was sleeping and traded them for heroin. The defendant denied ever going to the Dragon's Den. He also denied knowledge of the presence of the guns in Hilda's home.

Thereafter, the defendant claimed Sipos had told him she had "some stuff" she was going to trade for drugs, but he denied knowledge of the nature of the items. Subsequently, the defendant conceded he knew Sipos wanted to trade guns, but denied knowledge they came from Hilda's house. Ultimately, however, he conceded he knew the guns came from Hilda's home.

Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant committed three counts of theft of a firearm. The verdict returned in this matter indicates the jury credited the testimony of Sipos. That testimony established the defendant directly committed the offenses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. *Watts*, 168 So.3d at 447. Further, even in the defendant's recorded interview, he ultimately admitted knowledge that the guns he transported with Sipos to sell to Izzy came from his

7

grandmother's home. We reject the defendant's argument that he cannot be guilty as a principal to the theft of the guns because he "only participated in 'transportation and facilitation' after the taking." The defendant fails to recognize that the charged offense requires not only the "taking of a firearm which belongs to another," but also includes "[a]n intent to deprive the other permanently of the firearm." See La. R.S. 14:67.15(A). The defendant's conduct of transporting Sipos and the guns, which he knew were taken from his grandmother's house, are actions that aided and abetted in depriving the owner permanently of the guns. See *State v. Bindom*, 410 So.2d 749, 752 (La. 1982) (wherein the court found evidence indicating the defendant was the driver of the vehicle that stopped and picked up the actual perpetrator of the theft *after* the bank robbery was sufficient to support the defendant's conviction as a principal). Based on the defendant's own statement, he was guilty of the crimes as a principal for aiding and abetting in their commission.

In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). In accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See *State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam).

This assignment of error is without merit.

# SPECIAL JURY INSTRUCTION

In assignment of error number one, the defendant argues the trial court erred in refusing to give a requested special jury charge, which tracked language from *State v. Cayton*, 98-100 (La. App. 3d Cir. 10/28/98), 721 So.2d 542.

Louisiana Code of Criminal Procedure article 807 provides:

> The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
>
> A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

Prior to closing argument, the defense requested certain special jury charges, including the following language:

> The State must prove that Defendant's participation was sufficient to convict him as a principal. Knowledge that a crime will be, or has been committed, in [sic] insufficient by itself.

The requested special jury charge quoted language from *Cayton*, 721 So.2d at 544. The trial court denied the request for the special jury charge, noting it had included additional law on principals also requested by the defense that "more accurately reflect[ed] the current state of the law." The defense objected to the ruling.

In regard to principals, the trial court charged the jury:

> All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether present of [sic] absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. However, a person's mere presence at the scene is not enough to concern him in the crime. Only those persons who knowingly participate in the planning or execution of a crime may be said to be "concerned" in its commission, thus making them liable as principals. A principal may be connected to those crimes for which he has the requisite mental state.

The trial court correctly concluded that the concepts expressed in the

9

proposed defense special jury charge were included in the special charge on principals. The charge included the substance of the legal definition of principals, La. R.S. 14:24, as well as recent language from this court (requested by the defense) defining principals. See State v. Green, 2016-0057 (La. App. 1st Cir. 2/7/17), 211 So.3d 683, 688, rev'd on other grounds, 2017-0435 (La. 12/5/17), 231 So.3d 30.

This assignment of error is without merit.

## REVIEW FOR ERROR

Pursuant to La. C.Cr.P. art. 920, this court routinely conducts review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record, we have found a sentencing error. The State has raised this sentencing error in its brief and suggests that this court impose the minimum mandatory fine of $1,000.00 on each count.

On counts II and III, the trial court imposed a single $1,000.00 fine.[4] The mandatory fine for each count, however, was "a fine of one thousand dollars." La. R.S. 14:67.15(C)(1).[5] An appellate court is authorized to correct an illegal sentence pursuant to La. C.Cr.P. art. 882(A), when the sentence does not involve the exercise of sentencing discretion by the trial court. The correction of this error does not involve sentencing discretion, as the $1,000.00 fine is mandatory. Accordingly, we amend the sentences on counts II and III to include, on each count, a fine in the amount of $1,000.00 and affirm these sentences, as amended. See State v. Lambert, 2011-2006 (La. App. 1st Cir. 6/8/12), 93 So.3d 771, 780, writ denied, 2012-1592 (La. 1/25/13), 105 So.3d 65; see also State v. Carter, 2016-1078 (La. App. 1st Cir.

---

[4] The imposition of the fine is reflected in the sentencing transcript, but not the sentencing minutes. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Martin, 2017-1100 (La. App. 1st Cir. 2/27/18), 243 So.3d 56, 59 n.2, writ denied, 2018-0568 (La. 3/6/19), 266 So.3d 901.

[5] The defendant's habitual offender adjudication on count I prohibited imposition of a fine on that count. See State v. Thomas, 2012-0177 (La. App. 1st Cir. 12/28/12), 112 So.3d 875, 880 (en banc).

12/22/16), 210 So.3d 306, 309-10, <u>writ not considered</u>, 2017-0399 (La. 4/24/17), 219 So.3d 1100.

**CONVICTIONS AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE ON COUNT I AFFIRMED; SENTENCES ON COUNTS II AND III AMENDED AND AFFIRMED AS AMENDED.**

# STATE OF LOUISIANA

## COURT OF APPEAL

### NO. 2019 KA 0470

## STATE OF LOUISIANA

### VERSUS

## PATRICK JAMES KRAEMER

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**HIGGINBOTHAM, J., AGREES IN PART AND DISSENTS IN PART AND ASSIGNS REASONS.**

I agree with affirming the defendant's convictions, habitual offender adjudication, and sentence on Count 1, but I respectfully dissent from the majority's decision to amend the illegally lenient sentences on Counts 2 and 3. The majority correctly points out that the trial court did not impose the correct amount for the statutorily mandated fine, which is a patent error. However, I would decline to correct this error since the sentences are not inherently prejudicial to the defendant and the State merely raised the issue in its opposition brief rather than on appeal. See **State v. Price**, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-125 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277. See also **State v. Turner**, 2008-1188 (La. App. 5th Cir. 5/12/09), 13 So.3d 695, 704-705, writ denied, 2009-2100 (La. 8/18/10), 42 So.3d 400. Accordingly, I would affirm the defendant's convictions, habitual offender adjudication, and sentences.

1