912 So.2d 719 (2005)
STATE of Louisiana, Appellee,
v.
Jerome SEWELL, Appellant.
No. 40,768-KW.
Court of Appeal of Louisiana, Second Circuit.
October 20, 2005.
*720 Walter Lee Perkins, Jr., for Appellant.
Jerry L. Jones, District Attorney, Robert Nicholas Anderson, Assistant District Attorney, for Appellee.
Before DREW, MOORE and LOLLEY, JJ.
WRIT GRANTED, SUPPRESSION REVERSED AND VACATED, REMANDED.
The initial stop (of the vehicle in which defendant Sewell was riding) was lawful, based on the officer's observation of the car straddling the center line of the roadway, which is an obvious violation of La. R.S. 32:79. See State v. Waters, 780 So.2d 1053 (La.2001). The officer clearly had probable cause for the stop, though a traffic stop technically could be made upon satisfying the lesser burden of reasonable suspicion of the offense. See U.S. v. Santiago, 310 F.3d 336 (5th Cir.2002). This stop could also be justified upon reasonable suspicion that the operator was impaired. See State v. McVan, 744 So.2d 641 (La.2d Cir.1999).
The subjective intent of the officer making the traffic stop is irrelevant, as long as he observed the traffic violation. See Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
To extend a traffic stop longer than required to process the traffic matter, an officer must develop additional reasonable suspicion of criminal activity, pursuant to La. C. Cr. P. art. 215.1. D. Several observable facts provided the officer with ample justification for extending the stop.
Though the phrase "high crime area" is often overused these days, the area around North 11th Street and Adam Street in Monroe is associated with drugs and prostitution. There is a close association between narcotics traffickers and weapons. See State v. Wilson, 00-0178 (La.12/8/00), 775 So.2d 1051. Further uncertainty was injected into this volatile situation by Sewell's conduct when he spotted the officer. Sewell quickly climbed into the vehicle, and the car then sped off. Flight is the consummate act of evasion. See Illinois v. *721 Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), and State v. Benjamin, 722 So.2d 988 (La.1998). The situation became even more problematic when someone in the vehicle tried to exit the car before it stopped rolling.
Even though Officer Hitt's previous interaction with Sewell did not involve guns, the standard for whether or not reasonable suspicion of danger exists is an objective test, predicated on the observations, reactions, and conclusions of "a reasonable peace officer." See State v. Dumas, 786 So.2d 80 (La.2001).
The officer called for backup, and then, for his safety, justifiably blocked the exit of the person trying to get out of the moving vehicle. By nosing his patrol unit to block this dangerous attempt at egress, he may have saved someone from physical injury.
La. C. Cr. P. art 215.1. A-C is Louisiana's codification of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), our nation's seminal stop and frisk case. Both Terry and the referenced code article establish these simple guidelines:
 An officer may make a stop (detain a person or vehicle) if the officer is able to articulate particularized observations leading to the conclusion that reasonable suspicion of criminal activity is present;
 If the officer develops reasonable suspicion of danger, the detainee may be frisked for weapons; and
 If the officer then develops reasonable suspicion that the subject is actually armed, then the subject may be searched for weapons.
Reasonable suspicion is a much lesser burden than probable cause, and a search is much more extensive than a frisk. See State v. Cooper, 830 So.2d 440 (La.App. 2d Cir.2002)
The officer then removed Sewell from the car, for officer safety, as per his training. This technique allows the officer to see the suspect's hands. Of benefit to this analysis are three cases involving removing suspects from vehicles for officer safety:
 Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), which authorizes getting the driver out of the car for officer safety, predicated upon the officer reasonably suspecting general danger;
 State v. Landry, 588 So.2d 345 (La.1991), a Louisiana case authorizing the removal of guest passengers for officer safety, again only requiring a generalized reasonable suspicion of danger; and
 Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), a U.S. Supreme Court case concerning the removal of guest passengers, holding basically the same as the Louisiana Supreme Court had in Landry, six years earlier.
When the officer patted Sewell down, he felt a small hard object that he reasonably suspected might be a weapon. He had every right to remove the object, whether or not Sewell consented. This means that when Officer Hitt reached for the object, he was attempting to make a lawful seizure of property, which would fit into the official conduct contemplated in La. R.S.14:108. A. Sewell's quick shoving of his hands into his pockets and the ensuing struggle amounted to resistance and opposition to this lawful search. Such conduct is proscribed by La. R.S. 14:108. B(1)(b), Resisting an Officer. The officer testified that he subdued and cuffed the subject, then arrested him for "interfering with a police investigation." Technically, a crime by this name doesn't exist. However, *722 the officer had ample probable cause for an arrest for resisting an officer, so the arrest was legal. See Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).
The subsequent seizures of the drugs remaining (post-struggle) on the back of the car were justified by abandonment and/or plain view and/or a wingspan or lunge space search incident to arrest.
The residue legally gathered from Sewell's fingers and buttocks is admissible under the continuing right of an officer to search incident to a valid arrest and also pursuant to the inevitable discovery rule. See State v. Drake, 31,528 (La.App.2d Cir.1/20/99), 733 So.2d 33, writ denied, 99-1060 (La.9/24/99), 747 So.2d 1117.
As we disagree with the learned trial court's suppression of this evidence, we accordingly grant the writ, reverse the trial court's ruling, and remand this case for further proceedings.