942 So.2d 579 (2006)
STATE of Louisiana, Appellee
v.
Anthony Wayne DODSON, Appellant.
No. 41,415-KA.
Court of Appeal of Louisiana, Second Circuit.
October 16, 2006.
Rehearing Denied December 7, 2006.
*582 James E. Beal, Jonesboro, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Assistant District Attorney, for Appellee.
Before STEWART, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the 26th Judicial District Court, Parish of Bossier, State of Louisiana. The defendant, Anthony Wayne Dodson, entered a Crosby[1] plea to illegal carrying of weapons while in the possession of controlled dangerous substances (CDS), a violation of La. R.S. 14:95(E). He was sentenced to serve eight years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, to be served consecutively with any other sentence, and was fined $5,000.00. On appeal, Dodson argues that the trial court erred in denying his motion to suppress. He also argues that La. R.S. 14:95(E) is unconstitutional as applied to him. For the following reasons, we vacate Dodson's conviction and sentence and remand the case for further proceedings.

FACTS
On January 9, 2001, the defendant, Anthony Wayne Dodson, was arrested and ultimately charged by bill of information with possession of a firearm while in the possession of Schedule II, III, and IV controlled dangerous substances, a violation of La. R.S. 14:95(E). In response, Dodson filed a motion to suppress the evidence, and a hearing was conducted.
At that hearing, Louisiana State Trooper George Beck testified that just after 6:00 A.M. on January 9, 2001, he and another trooper observed a Mitsubishi Galant parked so as to occupy two parking spaces at the I-20 rest stop in Bossier Parish. The Galant had an expired Arkansas dealer license plate.
Trooper Beck knew that such a plate could not be "run" to return information about the car because they are not issued to a specific car, so Tpr. Beck approached the vehicle to obtain its vehicle identification number. When he approached the car, he found Dodson and another man, Fred Poole, asleep in the car. Trooper Beck knocked on the window and awoke Dodson, who got out of the car and appeared to Tpr. Beck to be "possibly intoxicated or on narcotics." Poole also got out of the car and also appeared to be "intoxicated or high." Trooper Beck said that Poole was
. . . very unsteady on his feet. He appeared to me to be under the influence of something. . . . And I asked him if he knew where he was, because he kept looking around all over like he didn't realize where he was. And the only thing he would say was, "huh." I asked him two questions, and the answer to both questions was "huh."
Trooper Beck said that his impression that the men were under the influence of narcotics *583 was based on his training in field sobriety, and he said that he did not smell alcohol on Dodson.
The trooper took Dodson's Arkansas driver's license and noted that Dodson's hands were shaking because he was nervous. Trooper Beck learned that Dodson's license was valid; however, he also determined through a criminal history check that Dodson had a prior arrest for narcotics. Trooper Beck said that Dodson also appeared to be unkempt "like he'd . . . been out all night. . . ." Trooper Jason Parker, riding with Tpr. Beck, testified that the troopers then learned that Poole likewise had a criminal history for narcotics; Tpr. Beck did not recall when he learned of Poole's prior drug involvement. Dodson had no registration papers for the car, but a check revealed that the car had not been reported stolen. Trooper Beck issued Dodson a warning ticket for illegal parking; he decided not to write a citation after Dodson told him that he had parked in the only space available when he arrived at the rest area.
Dodson told Tpr. Beck that his destination was Springhill, Arkansas, a destination that Tpr. Beck knew to be only "forty-five minutes to an hour" away from the rest area. Beck said that based on all of this, and in particular because of the men's criminal history, he suspected that the men might be transporting narcotics. He explained that in his experience "if someone is high and they're in a vehicle, or appears to you to be high or intoxicated, that they more often than not are carrying narcotics with them." Trooper Beck also said:
After I issued the ticket, I gave him back his license and Mr. Poole's ID and separated from the traffic stop. Basically was giving him the opportunity to leave, and once I did that, I asked him if I could speak to him. He voluntarily agreed. And then I asked him for permission to search his vehicle.
Trooper Beck did not remember what he said to Dodson upon returning his license but said that he may have said "have a nice day" before saying something like "`Hey, Mr. Dodson, can I speak to you?' or something to that effect" and asking for Dodson's consent to search. Beck explained that he had learned in his training that any request to search the car should be made separately from the traffic stop.
Trooper Jason Parker testified:
While we were atwhen Trooper Beck ran the criminal histories while we were in the patrol car, while we were waiting on the response, Trooper Beck filled out a violation ticket for improper parking. Once we got the criminal histories back, Trooper Beck approached Mr. Dodson, issued him a violation ticket for the improper parking, and then presented a Louisiana consent to search form to him.
Parker said that Dodson appeared normal (not nervous or intoxicated) to him, but that Poole appeared to be intoxicated or disoriented. The troopers were accompanied by a narcotics dog, but the dog was not used in the stop.
Dodson signed the consent form approximately 22 minutes after the stop began. Another trooper arrived and the troopers searched the vehicle. The troopers found two handguns and a quantity of several types of narcotics including methamphetamines and marijuana. Poole had an outstanding warrant, but the troopers did not learn that until after the search and seizure.
The trial court denied Dodson's motion to suppress, and this court denied Dodson's writ application, advising the defendant that he had an adequate remedy on appeal in the event of conviction.
*584 Dodson opted to plead guilty. In accepting Dodson's guilty plea in August 2005, to the original charge of violating La. R.S. 14:95(E), the trial court engaged Dodson in the Boykin colloquy. The following portions of the exchange are relevant:
Q (The Court): You understand that you have a right to continue with your not guilty plea and have a trial?
A (The Defendant): Yes, sir.
Q: You understand that the D.A. must prove his case beyond a reasonable doubt?
A: Yes, sir.
Q: You understand that you have a right to remain silent during the course of your trial?
A: Yes, sir.
Q: You understand that your attorney would examine the D.A.'s witnesses during the course of the trial?
A: Yes, sir.
Q: You understand that you have a right to subpoena witnesses to testify on your behalf?
A: Yes, sir.
Q: You understand that if convicted you'd be given the right to appeal?
A: Yes, sir.
Q: You understand that if I accept your guilty plea that you'd be waiving or giving up these rights, except for the right to appeal the pre-sentI mean the pre-trial ruling that I made on the motion to suppress?
A: Yes, sir.
The trial court did not inform Dodson that he was entitled to a trial by jury at any point during the plea proceeding, nor did Dodson's attorney state on the record that he had informed Dodson of this right.[2]
The trial court asked Dodson's trial counsel whether he believed that Dodson understood his rights and was voluntarily waiving them, and the attorney answered in the affirmative. The trial court then accepted Dodson's guilty plea. Subsequently, Dodson was sentenced, and this appeal ensued.

DISCUSSION

Boykin colloquy
The entry of a guilty plea must be a free and voluntary choice on the part of a defendant. State v. Garth, 622 So.2d 1189 (La.App. 2d Cir.1993). A valid guilty plea requires a showing that the defendant was informed of and waived his constitutional rights of trial by jury and confrontation and the privilege against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).
Further, La. C. Cr. P. art. 556.1(A)(3) provides, in pertinent part, as follows:
A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
* * *
(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
*585 A guilty plea will not be considered free and voluntary unless the court advises the defendant of the triad of these rights as explained in Boykin, supra, and Louisiana jurisprudence. An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. Boykin, supra; State v. Morrison, 599 So.2d 455 (La.App. 2d Cir.1992). Furthermore, the trial court cannot rely on an assumption that defense counsel adequately informed the defendant of his rights. State v. Williams, 384 So.2d 779 (La.1980); Morrison, supra.
Advice of Right to Confront Accusers
This court recently reversed a conviction obtained by a guilty plea where the trial judge's advice to the defendant of his right to confront his accusers was very similar to the advice given in this case. State v. Mendenhall, 40,986 (La.App. 2d Cir.05/19/06), 930 So.2d 1196.
In Mendenhall the trial court's confrontation advice to the defendant was:
At the trial the DA would have to prove the case beyond a reasonable doubt. Your attorney would cross-examine the DA's witnesses.
In the instant case, the trial court's confrontation advice was:
You understand that the D.A. must prove his case beyond a reasonable doubt? . . . You understand that your attorney would examine the D.A.'s witnesses during the course of the trial?
In Dodson's case, the judge left off the word "cross" before the word "examine" and added the phrase "during the course of the trial" to his advice. Despite these changes, the advice regarding confrontation is very similar to that used in Mendenhall. For the reasons stated in Mendenhall, regarding very similar confrontation advice deemed to be inadequate, we vacate Dodson's conviction and sentence and remand his case to the trial court for further proceedings.
Jury Trial Advice
We also note an additional deficiency in Dodson's Boykin colloquy. Whereas he was informed during the course of the proceedings against him of his right to a jury trial, he was not so informed when he actually entered his guilty plea.
Ordinarily, a defendant is first advised of his right to a jury trial at arraignment. La. C. Cr. P. art. 780. This advice is normally given again during the Boykin colloquy. In State v. Disotell, 40,989 (La. App. 2d Cir.05/17/06), 930 So.2d 359 and State v. Robinson, 40,983 (La.App. 2d Cir.05/17/06), 930 So.2d 345, this court held that the trial court's failure to inform the defendant of his right to a trial by jury is a fatal defect in the proceedings that requires this court to vacate and set aside the defendant's conviction and sentence and remand the case for further proceedings.
However, the Louisiana Supreme Court has ruled that courts may look beyond a guilty plea colloquy to an expanded record to determine whether a voluntary waiver occurred. State v. Lawson, 410 So.2d 1101 (La.1982). In State v. Cusher, 400 So.2d 601 (La.1981), the court relied on the defendant's presence at pretrial proceedings to find that he had knowledge of his right to confront witnesses. In State v. Worsham, 32,670 (La.App. 2d Cir.02/01/00), 754 So.2d 1107, the record showed that the trial court failed to inform Worsham of his right to a jury trial when accepting his guilty plea to carnal knowledge of a juvenile. However, the record also showed that Worsham was advised of his right to a jury trial at the arraignment. Thus, we found Worsham's guilty plea to have been valid.
*586 Although Dodson was not advised of his right to a jury trial during the guilty plea colloquy, our review of the record shows that he was advised of the right to a jury trial during the hearing on the motion to recuse the D.A.'s office. Under these limited circumstances (particularly noting that the matter is already being remanded for the discussed reasons anyway), we find that Dodson had knowledge of his right to a jury trial and knowingly entered his guilty plea. Still, we strongly caution the trial court to exercise greater vigilance in advising a criminal defendant on the record during guilty plea colloquies of the specific rights required under Boykin, supra. Advising of the right to a trial does not suffice to inform the defendant of his specific right to a jury trial. Similarly, the prosecutor is advised to exercise greater care in noting errors so as to assist the trial court in completing valid convictions.

Motion to Suppress
Dodson also raises two assignments of error on appeal. We choose to address the issues, even though his conviction and sentence are being vacated for other reasons, so as to resolve them for future proceedings. First, Dodson argues that the trial court erred in denying his motion to suppress all evidence seized in his custody. Dodson argues that the evidence was obtained in violation of his Constitutional right to be free from unreasonable search and seizure. There are two possible interpretations of the facts in this case that lead to different legal analyses (the trial court did not clearly articulate which interpretation it accepted). The first interpretation of the facts is that the troopers concluded the traffic stop but continued to detain Dodson until he signed the consent to search form. The second interpretation is that Dodson was free to leave at the time he consented to the search of his car.
The Fourth Amendment to the United States Constitution and Article I, § V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Barnard, 37,032 (La.App. 2d Cir.05/14/03), 847 So.2d 99. The state has the burden of proving the admissibility of evidence seized without a warrant. La. C. Cr. P. art. 703(D). A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Barnard, supra.
In this case, the troopers observed that Dodson's vehicle was parked sideways across two parking spaces and that its license plate had expired, ample reasons for commencing their investigation. La. C. Cr. P. art. 215.1 provides, in part:
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.
(Emphasis added.) As set forth in La. C. Cr. P. art. 215.1(D), the continued detention of a motorist after the conclusion of a traffic stop requires that the officer have reasonable suspicion of additional criminal activity. See also State v. Miller, XXXX-XXXX (La.10/26/01), 798 So.2d 947. Reasonable *587 suspicion is a much lesser burden than probable cause. State v. Sewell, 40,768 (La.App. 2d Cir.10/20/05), 912 So.2d 719, writ denied, XXXX-XXXX (La.04/17/06), 926 So.2d 522.
Assuming arguendo that the troopers actually detained Dodson after concluding the stop for the parking violation, the circumstances show that they acted reasonably. In State v. Dixon, 39,994 (La. App. 2d Cir.09/21/05), 911 So.2d 372, this court observed:
[T]here is no bright-line rule for determining when a lawful detention lasts too long, each instance must be assessed in view of the surrounding circumstances. The diligence of the police officers in pursuing a means of investigation likely to quickly confirm or dispel their suspicions should be considered. In determining whether an officer had a reasonable suspicion of some separate illegal activity which justified further detention, the totality of the circumstances must be taken into account.
(Citations omitted). In this case, Tpr. Beck testified that both men appeared to be intoxicated or under the influence of drugs, and he did not smell alcohol on Dodson. His check of the men's criminal history revealed that both men had prior arrests for narcotics, and Dodson appeared unusually nervous. The trooper said that in his experience, persons who behaved in this manner were often carrying narcotics. The entire encounter lasted only 22 minutes until Dodson signed the consent to search form, and consent was given almost contemporaneously with the end of the traffic stop. This was not an extended detention by any means, and the troopers acted reasonably under the circumstances.
Further, it is far from clear that Dodson was being detained when he consented to the search. Trooper Beck stated that he had released Dodson to go and then had asked him for his consent to search the car, consent which was freely given. The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). There is no requirement under the federal constitution that a lawfully detained person be told that he is free to leave prior to giving a valid consent to search. Id.
The validity of a search pursuant to a defendant's consent hinges on the voluntariness of the consent, which is a question of fact to be determined by the court under the facts and circumstances of each case. The factual determination of the trial judge is entitled to great weight upon review. Dixon, supra. Consensual interrogation can follow the end of a valid traffic stop. U.S. v. Sanchez-Pena, 336 F.3d 431, 442-43 (5th Cir.2003). As noted, Dodson gave his consent to search at the end of the traffic matter or immediately thereafter, and there is no indication in this record of any coercion or other improper action by the troopers. So considering, this assignment of error is without merit.
In his second assignment of error, Dodson argues that La. R.S. 14:95(E) is unconstitutional in that it denies equal protection and due process of law as presently applied. In Crosby, supra, the supreme court observed:
[E]ven an un qualified (sic) plea of guilty does not preclude review of what are regarded as `jurisdictional' defects-those which, even conceding the accused's factual guilt, do not permit his conviction of the offense charged. These include, for example: the lack of jurisdiction of the sentencing court; the conviction represents *588 double jeopardy; the prosecution, when instituted, had prescribed; the state lacked constitutional or legal power to try the accused for the offense charged; the statute under which the prosecution is brought is unconstitutional; the charge brought in the indictment does not constitute a crime; certain types of patent error preventing conviction for the offense.
(Citations omitted.) Therefore, if the claim is properly preserved for review, a defendant may argue on appeal that the statute of conviction is unconstitutional.
However, in this case, this claim of unconstitutionality was not raised in the proceedings below. Issues not submitted to the trial court for decision will not be considered by the appellate court on appeal-constitutional issues are no exception. State v. Williams, XXXX-XXXX (La.10/15/02), 830 So.2d 984, 988.
Even if we were to consider the claim, it would be without merit. Louisiana R.S. 14:95 is a long statute prohibiting a variety of acts regarding the use of several types of weapons. Dodson pled guilty to violating section (E), which provides:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence. Upon a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than twenty years nor more than thirty years without the benefit of probation, parole, or suspension of sentence.
The statute has a variety of general exceptions. Excepted from the statute[3] are persons who are:
. . . sheriffs and their deputies, state and city police, constables and town marshals, or persons vested with police power when in the actual discharge of official duties . . . [or] sheriffs and their deputies and state and city police who are not actually discharging their official duties, provided that such persons are full time, active, and certified by the Council on Peace Officer Standards and Training and have on their persons valid identification as duly commissioned law enforcement officers.
La. R.S. 14:95(G)(1). Also excepted is:
. . . any law enforcement officer who is retired from full-time active law enforcement service with at least twelve years service upon retirement, provided that such retired officers have on their persons valid identification as retired law enforcement officers.
La. R.S. 14:95(G)(2). Similarly excepted are:
. . . active or retired reserve or auxiliary law enforcement officers qualified annually by the Council on Peace Officer Standards and Training and who have on their person valid identification as active or retired reserve law or auxiliary municipal police officers.
La. R.S. 14:95(G)(3)(a).
Dodson argues that the exceptions for law officers who are not actually discharging their official duties, retired law officers and auxiliary law enforcement officers serve no legitimate state interest and *589 deprives him of equal protection of the law.
A statute is presumed to be valid and its constitutionality should be upheld whenever possible. State v. Turner, 2005-2425 (La.07/10/06), 936 So.2d 89. Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3. The supreme court upheld the statute against a constitutional attack on other grounds in State v. Blanchard, XXXX-XXXX (La.01/18/01), 776 So.2d 1165. With regard to the exceptions that Dodson complains of, they appear to be designed primarily to except these persons from the weapons prohibition in the statute, although by their terms they do except these persons from the drug weapons provision in section (E) as well. One rational basis for this would simply be to prevent an off-duty, reserve or retired officer from running afoul of the law inadvertently when assisting other officers or when there is a question about the on-duty or active status of the officer. The exceptions are not irrational and the statute is not invalid because of them. This assignment of error is likewise without merit.

CONCLUSION
Per Mendenhall, supra, the confrontation advice Anthony Wayne Dodson received at his plea was inadequate, thus, we vacate Dodson's conviction and sentence and remand this case for further proceedings.
CONVICTION AND SENTENCE VACATED; MATTER REMANDED FOR FURTHER PROCEEDINGS.
CARAWAY, J., concurs in the result.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, MOORE, and LOLLEY, JJ.
Rehearing denied.
BROWN J., would grant rehearing.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] The minutes say otherwise, but in case of a conflict, the transcript controls. State v. Lynch, 441 So.2d 732 (La.1983).
[3] With the exception of switchblade knives, La. R.S. 14:95(A)(4).