GAIDRY, J.
12The defendant, Louis Lambert, was charged by an amended grand jury indictment with the following: 24 counts of possession of cocaine, in violation of La. R.S. 40:967(C); 336 counts of malfeasance in office — tampering with evidence, in violation of La. R.S. 14:134.2; 4 counts of theft of a firearm, in violation of La. R.S. *773 14:67.15; 14 counts of illegal possession of a firearm, in violation of La. R.S. 14:95(E); 11 counts of possession of a legend drug without a prescription, in violation of La. R.S. 40:1238.1; 1 count of possession of oxycodone, in violation of La. R.S. 40:967(C); 1 count of possession of trenbo-lone acetate (steroids), in violation of La. R.S. 40:968(C); and 1 count of possession of alprazolam (xanax), in violation of La. R.S. 40:969(C).[1] The defendant initially pled not guilty. The defendant then filed a Motion to Quash the Indictment, which the trial court denied. Thereafter, the defendant changed his plea to guilty and entered a Crosby plea based on the ruling on the Motion to Quash.
The defendant was then sentenced as follows: on each count of possession of cocaine, committed to the Department of Corrections for a period of two (2) years at hard labor, and a fine of five hundred dollars ($500), with each count concurrent; on each count of malfeasance in office, committed to the Department of Corrections for a period of two (2) years at hard labor, with each count concurrent; on each count of theft of a firearm, committed to the Department of Corrections for a period of five (5) years at hard labor, with two (2) years to be served without benefit of parole, probation, or suspension of sentence, and a fine of ten thousand dollars ($10,000), with each count concurrent; on each count of illegal possession of |sa firearm, committed to the Department of Corrections for a period of ten (10) years at hard labor, with five (5) of the years to be served without benefit of parole, probation or suspension of sentence, and five (5) years suspended and placed on supervised probation, and a fine of one thousand dollars ($1,000), with each count concurrent; on each count of possession of a legend drug, committed to the Department of Corrections for a period of one (1) year, and a fine of one hundred dollars ($100), with each count concurrent; on the count of possession of oxycodone, committed to the Department of Corrections for a period of two (2) years, and a fine of one hundred dollars ($100); on the count of possession of trenbolone acetate (steroids), committed to the Department of Corrections for a period of two (2) years, and a fine of one hundred dollars ($100); and on the count of possession of alprazolam (xa-nax), committed to the Department of Corrections for a period of two (2) years, and a fine of one hundred dollars ($100). All periods of incarceration were ordered to run concurrently and the defendant was given credit for all time served.
In addition, the court found that the Louisiana State Police, the 23rd Judicial District Attorney’s Office, and the Assumption Parish Sheriffs Office suffered direct economic injury as a result of the defendant’s actions and ordered restitution as follows: to the Louisiana State Police, the amount of four thousand, four hundred and thirteen dollars and 29/100 ($4,413.29); to the 23rd Judicial District Attorney’s Office, the amount of one thousand, seven hundred and sixty-nine dollars and 56/100 ($1,769.56); and to the Assumption Parish Sheriffs Office, the amount of fifteen thousand, seven hundred and thirty-six dollars and 66/100 ($15,736.66). The defendant now appeals, designating two assignments of error. We affirm the convictions and affirm all sentences as imposed except for the sentences on theft of a 1 ^firearm, which are amended to reduce each fine to one *774 thousand dollars ($1,000), and affirmed as amended.
FACTS
The offenses for which the defendant, Louis Lambert, was charged occurred during his tenure as the evidence custodian of the Assumption Parish Sheriffs Office. The defendant became employed by the Sheriffs Office as a deputy in 1990 and for the ten years prior to his arrest, he was the custodian of the Assumption Parish Sheriffs Office evidence vault. Evidentia-ry abnormalities in drug-related cases prompted an investigation by the Sheriffs Office and the Louisiana State Police, which ultimately revealed that the defendant had removed, tampered with, and/or altered drugs and other items from the evidence vault in an effort to support a significant substance abuse problem.
In the course of that investigation, on April 8, 2010, Louisiana State Police executed a search warrant on the defendant’s personal residence in Labadieville, Louisiana. Inside the defendant’s home were located numerous Assumption Parish Sheriffs Department evidence envelopes from known investigations, current Assumption Parish prosecutions, as well as unknown cases, in which the evidence had been removed, tampered with, and/or altered. Additionally, inside the home were found quantities of cocaine, oxycodone, trenbolone acetate (steroids), alprazolam (xanax), marijuana, numerous legend drugs, and drug paraphernalia. Kept alongside these items were 14 guns. Included among those guns were a Ruger .22 caliber handgun located with a gallon-size bag of marijuana inside of the defendant’s bedroom closet, and an SKS 762 semiautomatic rifle located with marijuana in the defendant’s living room. The evidence vaults were subsequently audited and inventoried, at which time it was discovered that |,5numerous evidence envelopes, as well as the evidence inside, had been tampered with and/or altered. In total, the evidence in 336 cases was tampered with, altered and/or removed by the defendant. The defendant admitted that he knew or had reason to believe that the objects or substances were or would be the subject of investigation by state, federal, local or municipal law enforcement officers, and that he acted with the intent of distorting the results of those investigations. Shortly after the investigation was launched, the defendant voluntarily enrolled in a drug rehabilitation program.
Victim impact letters were submitted by the Louisiana State Police, the 23rd Judicial District Attorney’s Office, and the Assumption Parish Sheriffs Office. The Louisiana State Police requested restitution in the amount of $2,811.78. This amount represented the overtime costs for a crime lab analyst and a technician who spent almost 120 hours re-analyzing and re-categorizing evidence tampered with by the defendant. The State Police also identified $3,457.29 in overtime expenses for officers relative to this case, and $956.00 in administrative expenses such as paper and storage. The District Attorney’s Office requested restitution in the amount of $1,769.56 in direct costs. This amount was for consultation with an expert in attorney ethics retained to advise on the proper procedures to completely fulfill the ethical obligations imposed on the District Attorney’s Office in the handling of cases with compromised evidence, and for the supply and postage expenses incurred with mailings made in compliance with disclosure requirements. The Assumption Parish Sheriffs Office requested restitution in the amount of $15,736.66. Those costs included overtime incurred by deputies working on the investigation, a third-party vendor retained to audit |fithe property and evi *775 dence room and make recommendations, as well as miscellaneous expenses.
ASSIGNMENTS OF ERROR
Assignment of Error No. 1 — Motion to Quash
In his first assignment of error, the defendant argues that the trial court erred by denying his Motion to Quash the Indictment, specifically with respect to the charges of illegal possession of a firearm. The defendant was charged with violating La. R.S. 14:95(E), which makes it illegal to use, possess or have under his immediate control any firearm while in the possession of a controlled dangerous substance. The defendant apparently does not dispute that his actions constituted a violation of this statute. Rather, the defendant argues that another part of that statute, La. R.S. 14:95(G), provides immunity to him as a sheriffs deputy and that he could not, therefore, be charged with the offense of illegal carrying of weapons.
In denying the defendant’s motion to quash, the trial court noted that criminal statutes are to be strictly construed, but that “when [the] court looks at the statute and the argument posed by the defendant, the court finds that that would lead to absurd results, that there is no way that the court could reasonably conclude that the defendant was discharging his official duties or was in anyway acting in the furtherance of his employment as a police officer. In that regard, the court is going to deny the motion to quash.” The defendant argues that the trial court misread La. R.S. 14:95(G) and that a fair reading of the statute supports his position that law enforcement officers are exempt from the provisions of the statute.
When a trial court denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion. However, a trial court’s legal findings are subject to |7a de novo standard of review. See State v. Harris, 2011-0779 (La.App. 1st Cir.11/09/11), 79 So.3d 1037, 1044-45. In this case, the issue raised presents a question of law and is, therefore, subject to de novo review. See State v. Hinton, 2008-1849 (La.App. 1st Cir.2/13/09), 6 So.3d 242, 244, writ denied, 2009-0821 (La.3/4/11), 58 So.3d 466.
Louisiana Revised Statutes. 14:95(G)(1) provides:
The provisions of this Section except Paragraph (4) of Subsection A shall not apply to sheriffs and their deputies, state and city police, constables and town marshals, or persons vested with police power when in the actual discharge of official duties. These provisions shall not apply to sheriffs and their deputies and state and city police who are not actually discharging their official duties, provided that such persons are full time, active, and certified by the Council on Peace Officer Standards and Training and have on their persons valid identification as duly commissioned law enforcement officers.
Criminal statutes in the Louisiana Criminal Code must be given “a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La. R.S. 14:3. Moreover, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. State v. Odom, 2007-0516 (La.App. 1st Cir.7/31/08), 993 So.2d 663, 671 (per curiam). Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute. State v. *776 Odom, 993 So.2d at 671. In construing the applicable criminal statute, we consider two established rules of statutory construction: (1) all criminal statutes are constructed strictly; and (2) the words of a statute must be given their everyday meaning. See State v. Hinton, 6 So.3d at 244; State v. Gonzalez-Perez, 2007-1813 (La.App. 1st Cir.2/27/08), 997 So.2d 1, 4, writ denied. 2009-0292 (La.12/18/09), 23 So.3d 930.
|sThe defendant complains that the trial court read the clause in the first sentence of Paragraph G, “when in the actual discharge of official duties,” as though it applied to all of the classes of persons exempted in Paragraph G. The defendant apparently, and correctly, concedes that possession at his home of misappropriated firearms and controlled dangerous substances (in violation of La. R.S. 14:95(E)) does not fall within “the actual discharge of official duties.” He argues instead that he falls under the second sentence of Paragraph G, which says that these provisions “shall not apply to sheriffs and their deputies ... who are not actually discharging their official duties, provided that such persons are full time, active, and certified by the Council on Peace Officer Standards and Training and have on their persons valid identification as duly commissioned law enforcement officers.” The defendant interprets this second sentence to mean that all law enforcement officers who are full-time and active — whether or not they are in the discharge of their official duties — are simply exempt from the provisions of La. R.S. 14:95. The State points out that the defendant’s interpretation means that any police officer, simply by designation as a full-time officer certified by the Counsel on Peace Officer Standards and Training, has immunity, even if he is committing an illegal act.
There is no legislative record to illuminate the legislature’s intent regarding the second sentence of La. R.S. 14:95(G). However, it is presumed that the legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject. It is further presumed that a legislative branch intends to achieve a consistent body of law. State v. Odom, 993 So.2d at 671. We note that La. R.S. 14:95(G) creates other exemptions for certain classes of persons carrying illegal weapons, including: any law enforcement officer who is retired from fuUjtime9 active law enforcement service with at least twelve years service upon retirement, La. R.S. 14:95(G)(2); any enforcement officer of the office of state parks, in the Department of Culture, Recreation and Tourism who is retired from active duty as an enforcement officer, La. R.S. 14:95(G)(2); and active or retired reserve or auxiliary law enforcement officers, La. R.S. 14:95(G)(3)(a).
Though we have not, the Second Circuit Court of Appeal had occasion to address the issue of the interpretation of La. R.S. 14:95(G), though in a different context. State v. Dodson, 41,415 (La.App. 2d Cir.10/16/06), 942 So.2d 579, 589, reversed on other grounds, 2007-0057 (La.11/2/07), 967 So.2d 487 (per curiam). Their reasoning is relevant to our analysis. In Dodson, the defendant was arrested for possession of a firearm and narcotics together in his vehicle, a violation of La. R.S. 14:95(E). The defendant argued that La. R.S. 14:95(E) was unconstitutional because it denied him equal protection and due process of law as it was applied. He argued that the exceptions for law officers who were not actually discharging their official duties, retired law officers and auxiliary law enforcement officers, served no legitimate state interest and thus deprived him of equal protection of the law. In reject *777 ing this argument, the Second Circuit observed:
With regard to the exceptions that Dodson complains of, they appear to be designed primarily to except these persons from the weapons prohibition in the statute, although by their terms they do except these persons from the drug weapons provision in section (E) as well. One rational basis for this would simply be to prevent an off-duty, reserve or retired officer from running afoul of the law inadvertently when assisting other officers or when there is a question about the on-duty or active status of the officer.
State v. Dodson, 942 So.2d at 589.
| )0We agree with the reasoning of the Second Circuit, in that a rational basis for the exemption in the second sentence of La. R.S. 14:95(G) could have been to provide immunity to off-duty police officers who were inadvertently in violation of 14:95(E) or to protect them when there was a question about their status. Clearly the legislature intended to protect officers who were properly acting in their official capacity from prosecution for illegal carrying of weapons. Likewise, we believe that the legislature intended to protect off-duty officers who were also acting properly but whose actions might otherwise subject them to criminal liability for the illegal carrying of weapons. However, we find that the legislature could not have intended the interpretation advocated by the defendant. To follow the defendant’s reading of the law would be to allow any qualified officer, without regard to what that officer was doing, to violate the provisions of 14:95(E) with complete immunity. We do not believe there is anything to indicate that, by including this language in La. R.S. 14:95(G), the legislature intended to protect criminal conduct by police officers.
In this case, the defendant clearly abused his position as custodian of the Assumption Parish Sheriffs Office evidence vault. The defendant admitted that he knew that the evidence he took or altered would be the subject of investigations by state, federal, local or municipal law enforcement officers, and that he even acted with the intent of distorting those investigations. By his actions not only did the defendant jeopardize hundreds of criminal cases, but he also violated the public trust and marred the reputation of the Sheriffs Office. To allow the defendant to now hide behind his police badge and receive immunity from criminal prosecution for his actions would be an injustice and lead to an absurd result that the legislature surely did not intend by providing immunity to certain officers Inwho are not acting in the actual discharge of official duties. We find that the trial court did not err in denying the defendant’s motion to quash the indictment. This assignment of error is without merit.

Assignment of Error No. 2—Restitution

In his second assignment of error, the defendant argues that the trial court erred in ordering him to pay restitution to the Louisiana State Police, the District Attorney’s Office, and the Assumption Parish Sheriffs Office because none of these entities were “victims” of his crimes, and he did not agree to pay restitution to them as part of his plea agreement.
The defendant did not raise this issue in the trial court below, did not file a motion to reconsider sentence, or otherwise object to the sentence. To the contrary, immediately after the trial court announced the defendant’s sentence, including the order for restitution, the defendant’s attorney said “I’m not going to be filing a Motion to Reconsider the Sentence, and there are no other motions that I would have to file *778 prior to the filing for a Motion for Appeal, specifically the issue on the Court’s denial of the Motion to Quash.” In addition, prior to sentencing, during the hearing at which the defendant pled guilty, the defendant was made aware that the trial court had received statements from the Louisiana State Police Criminal Investigations Division and the Louisiana State Police Crime Lab, both talking about restitution and impact. The district attorney announced that he was also expecting further restitution information. A thorough review of the record indicates the defendant’s trial attorney did not make any oral or written motion to reconsider the sentence, object to restitution in general, or restitution to the particular parties.
Under the clear language of La.Code Crim. P. art. 881.1(E), failure to make or file a motion to reconsider sentence precludes a defendant from | i;>raising an objection to the sentence on appeal. One purpose of the motion to reconsider sentence is to allow the defendant to raise any errors that may have occurred in sentencing while the trial judge still has jurisdiction to change or correct the sentence. The defendant may point out such errors or deficiencies, or may present argument or evidence not considered in the original sentencing, thereby preventing the necessity of a remand for resentencing. State v. Mims, 619 So.2d 1059, 1059 (La.1993) (per curiam). The defendant’s failure to make or file a motion to reconsider sentence precludes him from raising an objection on appeal. State v. Felder, 2000-2887 (La.App. 1st Cir.9/28/01), 809 So.2d 360, 369, writ denied, 2001-3027 (La.10/25/02), 827 So.2d 1173. Thus, the defendant’s arguments concerning restitution are not properly before this court for the first time on appeal.
Moreover, even if this matter were properly preserved for review on appeal, the defendant’s substantive arguments are without merit. The defendant contends that he should not be required to pay restitution because the Louisiana State Police, the District Attorney’s Office and the Assumption Parish Sheriffs Office are not “victims” within the meaning of La.Code Crim. P. art. 883.2(A), and if they are “other victims” under 883.2(B), he should not have to pay restitution to them because that was not part of his plea agreement.
Louisiana Code of Criminal Procedure art. 883.2 states, in pertinent part:
A. In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
|iaB. Additionally, if the defendant agrees as a term of a plea agreement, the court shall order the defendant to provide restitution to other victims of the defendant’s criminal conduct, although those persons are not the victim of the criminal charge to which the defendant pleads. Such restitution to other persons may be ordered pursuant to Article 895 or 895.1 or any other provision of law permitting or requiring restitution to victims.
Sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records. State v. Danos, 2008-2085 (La.App. 1st Cir.7/22/09), 21 So.3d 414, 416. A review of the record in this case shows that the trial court had a sufficient basis upon which to find that *779 the state and parish entities were in fact “victims” of the defendant’s crimes because they suffered “actual pecuniary loss” pursuant to Article 888.2(A). Specifically, the Louisiana State Police presented evidence that they incurred overtime costs of $2,811.78 for a crime lab analyst and technician who spent almost 120 hours re-analyzing and re-categorizing evidence tampered with by the defendant, $3,457.29 in overtime expenses for officers relative to this case, and $956.00 in administrative expenses such as paper and storage, in addition, because the defendant had replaced or altered drug evidence with unknown substances, crime laboratory equipment, which is very sensitive, was negatively affected and slowed down the crime laboratory as a whole. The District Attorney’s Office presented evidence that they incurred $1,148.10 in direct costs for consultation with an expert in attorney ethics who was retained to advise them on the proper procedures to completely fulfill the ethical obligations imposed on the District Attorney’s Office in the handling of cases with compromised evidence. Additionally, the District Attorney’s Office submitted evidence that they spent $621.46 for the supply and postage 114expenses incurred with mailings made in compliance with disclosure requirements for the affected cases. Finally, the Assumption Parish Sheriffs Office presented evidence that the direct financial impact to their office included approximately $4,651.00 in payroll-related costs, $10,957.00 for a third-party vendor to audit the property and evidence room and report on the findings and make recommendations, as well as other miscellaneous costs of $128.66. In addition, the Sheriffs Office noted that there were other indirect costs incurred in terms of time and resources invested in specific cases that had to be dismissed due to the defendant’s actions.
Also incurred by all were costs unquantifiable by dollars. The credibility to local law enforcement and the judicial system as a whole was damaged, likely for years to come. In considering the restitution requests from the Louisiana State Police, the District Attorney’s Office and the Assumption Parish Sheriffs Office, the trial judge observed that “[t]he significant financial impact to all of these agencies, however, pales in comparison to the effect this conduct had on the integrity of our criminal justice system.”
In light of all this specific evidence, it was appropriate for the trial court to award restitution. Each entity was a victim as they suffered an actual pecuniary loss directly attributable to the defendant’s conduct. This is not a case where the trial court erroneously imposed restitution based upon mere speculation or in an absence of testimony or documentary evidence. See State v. Danos, 21 So.3d at 416.
Having found that the Louisiana State Police, the District Attorney’s Office, and the Assumption Parish Sheriffs Office are victims under Article 883.2(A), it is unnecessary to consider the defendant’s alternative argument regarding other victims under Article 883.2(B), except to note that we | ^completely reject the defendant’s attempt to equate the instant victims to insurance companies for purposes of restitution payments.
For the foregoing reasons, the defendant’s assignment of error number two is without merit.

SENTENCING ERROR

Under La.Code Crim. P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record, we have found sentencing errors. *780 See State v. Price, 2005-2514 (La.App. 1st Cir.12/28/06), 952 So.2d 112 (en banc), writ denied, 2007-0130 (La.2/22/08), 976 So.2d 1277.
For theft of a firearm, a defendant is to be imprisoned with or without hard labor for not less than two years nor more than ten years, without the benefit of probation, parole or suspension of sentence and fined one thousand dollars. See La. R.S. 14:67.15(C)(1). The sentencing transcript indicates the trial court sentenced the defendant to five years imprisonment at hard labor, but only two years to be served without benefit of probation, parole or suspension of sentence. Accordingly, the defendant’s sentence is illegally lenient. In addition, for illegal possession of a firearm, a defendant is to be imprisoned at hard labor for not less than five years nor more than ten years without the benefit of probation, parole or suspension of sentence and shall be fined not more than ten thousand dollars. See La. R.S. 14:95(E). The sentencing transcript indicates the trial court sentenced the defendant to five years without benefit of probation, parole or suspension of sentence, and five years suspended and on supervised probation. Accordingly, this sentence is also illegally lenient. However, since these sentences are not inherently prejudicial to the defendant, and neither the 11fiState nor the defendant has raised these sentencing issues on appeal, we decline to correct the errors. See Price, 952 So.2d at 123-25.
For theft of a firearm, however, the trial court also sentenced the defendant to pay a fine of ten thousand dollars ($10,000). Under La. R.S. 14:67.15(0, part of the penalty for a first offense of theft of a firearm is a fine of one thousand dollars ($1,000). Accordingly, the trial court’s imposition of a ten thousand dollar fine is illegally excessive. An appellate court is authorized to correct an illegal sentence pursuant to La.C.ode Crim. P. art. 882(A), when the sentence does not involve the exercise of sentencing discretion by the trial court. See State v. Haynes, 2004-1893 (La.12/10/04), 889 So.2d 224 (per curiam). The correction of this error does not involve sentencing discretion, as the one thousand dollar fine is mandatory. Therefore, on each count of theft of a firearm, we vacate the ten thousand dollar fine and amend each fine to a one thousand dollar fine, and affirm these sentences as amended.
DECREE
For the reasons set forth herein, the defendant’s convictions are affirmed. All sentences except for those for theft of a firearm are affirmed. The sentences for theft of a firearm are amended to reduce each fine to $1,000.00, and as amended, these sentences are also affirmed.
CONVICTIONS AFFIRMED, ALL SENTENCES AFFIRMED AS IMPOSED EXCEPT FOR THE FOUR SENTENCES FOR THEFT OF A FIREARM, WHICH ARE AMENDED TO REDUCE EACH FINE TO ONE THOUSAND DOLLARS ($1,000), AND AS AMENDED, AFFIRMED.

. On that same day, another Bill of Indictment was filed that charged the defendant with 35 counts of possession of marijuana, 10 counts of possession of drug paraphernalia, and I count of theft under $300. Defendant concedes that these are misdemeanor offenses not reviewable by way of appeal.