993 So.2d 663 (2008)
STATE of Louisiana
v.
Robert "Bob" ODOM.
No. 2007 KA 0516.
Court of Appeal of Louisiana, First Circuit.
July 31, 2008.
*665 Doug Moreau, District Attorney, Sandra B. Ribes, Assistant District Attorney, Baton Rouge, Louisiana, for Appellant State of Louisiana.
Mary Olive Pierson, Karl J. Koch, Lewis O. Unglesby, Baton Rouge, Louisiana, for Defendant/Appellee Robert "Bob" Odom.
Before PARRO, KUHN and DOWNING, JJ.
PER CURIAM.
The State of Louisiana appeals the trial court's rulings granting motions to quash Counts 18, 19, and 20 of the grand jury indictment of defendant, Robert "Bob" Odom, the former Commissioner of the Louisiana Department of Agriculture and Forestry, and sua sponte dismissing without prejudice the remaining counts in the indictment. For the reasons that follow, we reverse the ruling of the trial court granting the motion to quash Count 18, affirm the ruling granting the motion to quash Counts 19 and 20, affirm the ruling dismissing the remaining counts in the indictment, and remand for further proceedings.

I. PROCEDURAL HISTORY
On August 22, 2002, defendant was charged by grand jury indictment with 21 counts of various felony offenses, including public bribery, felony theft, filing false public records, and money laundering, arising from allegations of public corruption involving his public office. The state filed a lengthy bill of particulars setting forth the specifics of the charges. A complex procedural history ensued, including the state's dismissal of numerous counts, defendant's filing of numerous motions to quash portions (and the entirety of some) of the remaining counts, the trial court rulings on these motions, and this court's appellate review of the rulings. In 2005, the trial court granted defendant's motion to quash the entire indictment based on the failure to timely commence trial. This court affirmed the ruling, but the supreme court reversed the judgment of this court and remanded for further proceedings.[1]State v. Odom, XXXX-XXXX (La.11/3/06), 941 So.2d 24 (per curiam), citing State v. Odom, XXXX-XXXX at p. 14, 925 So.2d 776 (Kuhn, J., dissenting). On remand, Counts 1, 2, 3, 11, 18, 19, and 20 remained before the trial court.[2]
In 2007, defendant filed a motion to quash Count 18, which charged defendant *666 with filing false public records, a violation of La. R.S. 14:133. On January 26, 2007, after a hearing was held on this motion and other matters, the trial court granted the motion.
Defendant then moved to quash the charges related to money laundering in Counts 19 and 20 on the basis that the alleged acts were not punishable under the money laundering statute. After argument was heard on February 26, 2007, the trial court granted the motion to quash Counts 19 and 20.[3]
After the ruling on Counts 19 and 20, the trial court ordered that the case proceed to trial that day as scheduled on the remaining counts. When the state refused to commence the trial, the trial court dismissed without prejudice the remaining counts (Counts 1, 2, 3, and 11) in the indictment.

II. ANALYSIS

A. Assignment of Error Number One
In assignment of error number one, the state argues that the trial court erred in granting defendant's motion to quash Count 18.
Count 18 charged defendant with a violation of La. R.S. 14:133 by the filing of income tax returns with the Louisiana Department of Revenue between August 20, 1998, and August 20, 2002, that contained false statements or false representations. The state alleges the false statements relate to defendant's failure to report income from his campaign, hunting club expenses, a truck for his son, and other personal expenses paid for by his campaign.
At the January 26, 2007 hearing, the trial judge acknowledged that the issue was res nova and granted the motion. The judge listed the following reasons for his ruling:
One, a state tax return is not a public record; two, the tax laws are more specific providing criminal conduct consequences for such filing of a false record; three, the statute in which the state has sought to prosecute Mr. Odom is of a general nature using the general, applicable law and referencing the following and wholistically [sic] both statutes charge the same conduct, in essence, affording a right which should not exist under any reasonable constitutional analysis of criminal law.
La. R.S. 14:133(A) provides, in pertinent part:
Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
(1) Any forged document.
(2) Any wrongfully altered document.
(3) Any document containing a false statement or false representation of a material fact.
Under the Public Records Law, public records include:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, *667 possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.
La. R.S. 44:1 A(2)(a). However, this general definition of "public records" shall not apply to "any tax return or information contained in any tax return." See La. R.S. 44:4(1).
In his motion to quash Count 18, defendant argues that the facts in the indictment fail to state an offense punishable under a valid statute and fail to allege the required elements of the crime. Defendant contends that La. R.S. 14:133 requires the filing of public records and under La. R.S. 44:4 of the Public Records Law, state income tax returns or information in them are not defined as public records.
The state argues that although the title of the charging statute is "Filing or maintaining false public records," the text of the statute does not require the state to prove that the record is a "public record." We agree. The language is not vague or ambiguous. The elements of the crime are: (1) the defendant files or deposits for record in any public office or with any public official, (2) with knowledge of its falsity, (3) any document containing a false statement or false representation of a material fact.
Defendant further argues that the legislature enacted La. R.S. 47:1642, which imposes a criminal penalty for the evasion of the payment of state taxes. Defendant claims that because the state wanted to inappropriately charge him with a higher grade of an offense, it charged him with a felony offense under La. R.S. 14:133, rather than the appropriate misdemeanor offense under La. R.S. 47:1642.
At the time of the alleged offenses, La. R.S. 47:1642 provided that the failure to file or the filing of a false tax return was a misdemeanor offense:[4]
Any person who willfully fails to file any return or report required to be filed by the provisions of this Sub-title, or who willfully files or causes to be filed, with the collector, any false or fraudulent return, report or statement, or who willfully aids or abets another in the filing with the collector of any false or fraudulent return, report or statement, with the intent to defraud the state or evade the payment of any tax, fee, penalty, or interest, or any part thereof, which shall be due pursuant to the provisions of this Sub-title, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned for not more than one year, or both.
The state relies on State v. Salat, 95-0072 (La.App. 1st Cir.4/4/96), 672 So.2d 333, writ denied, 96-1116 (La.10/4/96), 679 So.2d 1378, in which this court affirmed the defendant's convictions of six counts of filing false public records. Defendant, an attorney, had been charged with filing six petitions for damages in the East Baton Rouge Parish Clerk of Court's Office which bore backdated, file-date stamps. The clerk accepted and filed the petitions and backdated them to the dates on each petition. Prior to trial, defendant filed a *668 motion to quash, arguing that the definition of public record under La. R.S. 44:1(A)(2) of the Public Records Law did not cover the petitions filed by him. This court concluded that the definition of a public record in La. R.S. 44:1(A)(2) is not applicable to La. R.S. 14:133. We stated that the statute "does not require that the record filed be `public' but that it must be filed or deposited, with knowledge of its falsity, `in any public office or with any public officer.'" Salat, 95-0072 at p. 5, 672 So.2d at 336-37.
Defendant counters that Salat is distinguishable from the instant case. Although he agrees that the petitions in Salat were public records, he contends that in Salat this court "only analyzed the public or non-public nature of the petitions in light of the public records law," and we did not have to consider the specific exception for tax returns provided in La. R.S. 44:4.
We agree with the state's argument. This court made it clear in Salat that the offense in La. R.S. 14:133 is not limited to the filing of documents defined as public records in La. R.S. 44:1(A)(2). Since we concluded that the Public Records Law is not applicable to La. R.S. 14:133, it is not necessary for us to consider the specific exemption for tax returns under that law.
Contrary to defendant's argument and the trial court's reasoning, Louisiana law provides there may be more than one statute which proscribes a particular conduct, and the district attorney has the discretion to decide which statute will be used to prosecute that conduct. See La. R.S. 14:4. In State v. Smith, 597 So.2d 1151 (La.App. 1st Cir.), writ denied, 599 So.2d 311 (La. 1992), the defendant alleged that the state's prosecution of him under a felony perjury statute should be quashed because the perjury statute was preempted by a specific statute which established a misdemeanor offense for the making of false testimony before a civil service board. Although relying on a different legislative provision, the trial judge accepted defendant's argument and found that the legislature effectively preempted the discretion of the district attorney and limited the prosecution to that of a misdemeanor. In reversing the trial court's ruling, this court stated:
While the principle of statutory construction upon which the trial court relied is solidly entrenched in Louisiana jurisprudence, this principle applies only when there are two irreconcilable statutory provisions. Merely because more than one act of the legislature proscribes particular conduct does not mean that these multiple provisions are irreconcilable.
The district attorney has broad discretion in both the institution and handling of criminal prosecutions. LSA-Const. art. 5, § 26(B); LSA-R.S. 16:1 B; State v. Kibodeaux, 435 So.2d 1128, 1131 (La.App. 1st Cir.1983). He may decide whom, when, and how to prosecute. LSA-C.Cr.P. art. 61; State v. Coleman, 465 So.2d 709, 711 (La.1985). When conduct is made criminal under a section of the Revised Statutes and is also criminal according to some special statute, prosecution may proceed under either provision, at the discretion of the district attorney. LSA-R.S. 14:4(2); State v. O'Blanc, 346 So.2d 686, 690 (La.1977); State v. Kibodeaux, 435 So.2d at 1131. Even when the penalty under a general criminal provision differs from that established in a special provision, the district attorney has the discretion to proceed under either provision. See State v. Juluke, 374 So.2d 1259, 1260 (La.1979) (the district attorney has discretion to choose between prosecuting a defendant *669 for forgery, a felony, or unauthorized use of a credit card, a misdemeanor).
Smith, 597 So.2d at 1152-53.
Finally, defendant argues that if the state is allowed to prosecute tax offenses under La. R.S. 14:133, venue for this type of offense would always be in East Baton Rouge Parish, as a tax return must be filed in the Department of Revenue, which is located in Baton Rouge. However, defendant has not urged that he would be prejudiced if venue in the parish of East Baton Rouge were mandated. Moreover, we also note that there are other statutes which specifically provide for the place of venue. See La. R.S. 15:571.15.
For the reasons discussed above, this assignment of error by the state has merit.

B. Assignments of Error Numbers Two and Three
In assignments of error numbers two and three, the state contends the trial court erred in granting defendant's motion to quash Counts 19 and 20.
Defendant had filed a motion to quash counts 19 and 20. Count 19 charged defendant with money laundering, a violation of La. R.S. 14:230. The indictment alleged defendant conducted financial transactions "[b]etween on or about August 24, 1994, through on or about December 2001" involving funds greater than $20,000, but less than $100,000, known to be derived from extortion, theft, and public bribery to conceal or disguise the source of the proceeds derived from such violations by conspiring with his church members to transfer the interest owed by the church on loans from defendant's campaign funds to pay his personal expenses.
Count 20 charged defendant with conspiracy to commit money laundering, a violation of La. R.S. 14:26 and 230, during the same time period by conspiring with others to conduct the financial transactions alleged in Count 19.
The indictment and the bill of particulars indicate the allegations related to the money laundering charges concern transactions involving checks. Other counts, including Counts 1, 2, and 3 which relate to public bribery, refer to checks and items of value, such as a condominium. The state argues that in granting the motion to quash, the trial court ignored the wording of the state money laundering statute and federal jurisprudence, which provide that checks are proceeds in a money laundering prosecution.
Defendant responds that Louisiana's money laundering statute specifically defines funds and proceeds in the statute. He argues that since the definitions of funds or proceeds do not include checks or items of value, the alleged activity is not punishable under the statute.
Louisiana Revised Statute 14:230 provides for the offense of money laundering. Subsection (B) states it is unlawful for any person knowingly to do any of the following:
(1) Conduct, supervise, or facilitate a financial transaction involving proceeds known to be derived from criminal activity, when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law.
(2) Give, sell, transfer, trade, invest, conceal, transport, maintain an interest in, or otherwise make available anything of value known to be for the purpose of committing or furthering the commission of any criminal activity.
(3) Direct, plan, organize, initiate, finance, manage, supervise, or facilitate the transportation or transfer of proceeds *670 known to be derived from any violation of criminal activity.
(4) Receive or acquire proceeds derived from any violation of criminal activity, or knowingly or intentionally engage in any transaction that the person knows involves proceeds from any such violations.
(5) Acquire or maintain an interest in, receive, conceal, possess, transfer, or transport the proceeds of criminal activity.
(6) Invest, expend, or receive, or offer to invest, expend, or receive, the proceeds of criminal activity.
Subsection (A) of La. R.S. 14:230 defines the terms used in the statute, in pertinent part, as follows:
(2) "Funds" means any of the following:
(a) Coin or paper money of the United States or any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issue.
(b) United States silver certificates, United States Treasury notes, and Federal Reserve System notes.
(c) Official foreign bank notes that are customarily used and accepted as a medium of exchange in a foreign country and foreign bank drafts.
...
(4) "Proceeds" means funds acquired or derived directly or indirectly from or produced or realized through an act.
It is clear from the wording of the statute that the word "proceeds" refers to the word "funds," which is defined under Subsection (A)(2)(a), (b), and (c). Checks are not included in the definition. It is obvious that the definition intended to include items which are accepted as legal tender, that circulate, and that are customarily used and accepted as a medium of exchange.
The state also argues that the federal money laundering statute and federal jurisprudence offer guidance in interpreting the language of our state statute. The federal money laundering statute, 18 U.S.C.A. § 1956(a) provides, in pertinent part:
(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States
(A) with the intent to promote the carrying on of specified unlawful activity; or
(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
(ii) to avoid a transaction reporting requirement under State or Federal law,
...
In pertinent part, 18 U.S.C.A. § 1956(c) provides:
As used in this section
...
(3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and *671 with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;
...
(4) the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery
...
The state notes that in the authors' Comments in Louisiana Civil Law Treatise: Criminal Jury Instructions and Procedures, § 10.230(B)(1)-(6) (2004), Professors Cheney C. Joseph, Jr. and P. Raymond Lamonica suggest that it is not clear whether a check is included within the scope of the word "funds," as used in La. R.S. 14:230. The state further emphasizes that the authors state that until the Louisiana courts have had the opportunity to address the issues presented by the statute, federal law may provide guidance in statutory construction.
We reject the argument that the federal statute offers guidance to determine the issue presented, because the federal statute contains different terms which broaden the scope of the prohibited activity. While our state statute uses the term "funds," the federal statute refers to "monetary instruments," which are specifically defined as personal checks, bank checks, money orders and negotiable instruments, in addition to coin and currency. See 18 U.S.C.A. § 1956(c)(5). Our state statute is obviously not as broad as the federal statute. As defendant argues, the federal statute predates the enactment of this state's statute in 1994, and if the legislature had intended to include the more expansive definitions, it could have done so.
A criminal statute must be given a genuine construction consistent with the plain meaning of the language in light of its context and with reference to the purpose of the provision. La. R.S. 14:3. Moreover, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. State v. Peters, 2005-2069, p. 5 (La.App. 1st Cir.5/5/06), 935 So.2d 201, 204.
Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute. It is presumed that the legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language is interpreted by the courts on the assumption that the legislature was aware of existing statutes, rules of construction, and judicial decisions interpreting those statutes. It is further presumed that the legislative branch intends to achieve a consistent body of law. Peters, 2005-2069 at pp. 4-5, 935 So.2d at 203-04. Accordingly, we cannot look to the federal statute for guidance as suggested by the state. The wording of our statute is clear; the definition of either "proceeds" or "funds" does not include bank checks.
The state also argues that a money laundering violation of the statute can occur through the use of "anything of value," a term which includes checks. La. R.S. 14:230(B)(2) provides:

*672 Give, sell, transfer, trade, invest, conceal, transport, maintain an interest in, or otherwise make available anything of value known to be for the purpose of committing or furthering the commission of any criminal activity.
However, as noted by defendant in his brief to this court, he has not been charged in the indictment with a violation of Subsection (B)(2). Counts 19 and 20 clearly only charge defendant under La. R.S. 14:230(B)(1), (3), (5), and (6). Thus, we need not decide whether the term "anything of value" includes checks.[5]
Accordingly, we find these assignments of error lack merit.[6]

C. Assignment of Error Number Four
In assignment of error number four, the state argues that the trial court erred in dismissing the remaining counts in the indictment. After granting defendant's motion to quash Counts 19 and 20 on February 26, 2007, the trial judge stated he was severing all of the quashed counts, including Count 18 which had been quashed a few weeks earlier, from the remaining counts (Counts 1, 2, 3, and 11) in the indictment. The judge advised the assistant district attorney that he would sign the state's order of appeal, should it wish to appeal his rulings. The assistant district attorney indicated that the state would be appealing both rulings. The judge noted that he wanted the record to clearly reflect that he severed the quashed charges before signing the order of appeal, thus eliminating an argument that he was divested of jurisdiction over the remaining counts. The prosecutor noted his disagreement *673 with the trial judge's position.[7]
After a recess, the prosecutor argued there was a legal impediment to the commencement of the trial. He stated that if the case were tried and defendant were found guilty, defendant would be able to file a motion urging the court did not have jurisdiction at the time of trial and that a retrial would violate his privilege against double jeopardy.
The trial judge noted that while he preferred that all the counts be tried together, the issue before him was whether or not he was divested of jurisdiction. Reasoning that the case had been going on for over four years, that the case needed to be tried, and that he had a right to grant a severance in the interest of justice, the judge ordered the trial would be held that day as originally scheduled. The judge noted that he would grant a recess to the district attorney to seek immediate review in this court by filing an expedited writ, if he wished to do so. The trial judge indicated that if the assistant district attorney did not do so and did not participate in the trial, he would be held in contempt.[8]
When the court reconvened, the state advised the judge that it maintained the position that the court was divested of jurisdiction when it signed the order of appeal. The judge stated he did not want to take any action that would cause a double jeopardy violation. However, noting his belief that the court retained jurisdiction over the four remaining counts, that an end to the litigation was required in the interest of justice, and that the state failed to commence the trial, the judge dismissed without prejudice the remaining counts in the indictment.
The state contends that upon the court's granting of the motion to quash, the counts ceased to exist, and there was nothing to sever. The state also contends that defendant's dilatory tactics caused the trial to be delayed. The state asserts the defendant waited "until the eve of trial" to file his motion to quash, and because the trial court scheduled the hearing on the morning before the trial, defendant knew the trial could be delayed if the motions were granted. Although the trial judge mentioned he had the option to rule on the motions after the trial, defendant wanted to prevent evidence of the counts from being introduced at trial and requested a ruling before trial.
*674 In support of its argument, the state first notes the supreme court's December 5, 2002 per curiam opinion, which reversed the ruling of the trial court denying the state's motion to continue the trial. See State v. Odom, 2002-2932 (La.12/5/02), 835 So.2d 1286 (per curiam). The state had sought the continuance of the trial of the remaining counts while an appeal of another ruling partially quashing several counts was pending in this court. In that per curiam opinion, the supreme court stated:
Granted. The ruling of the district court denying the state's motion for a continuance of the trial is reversed. The interests of judicial economy require that all of the counts remaining of the original indictment returned against respondent be tried together in a single proceeding unless properly severed. The district court should not reset this case for trial until the merits of all of its rulings with respect to the remaining counts, including its partial quashing of five of the counts presently at issue in the court of appeal, have been finally resolved upon timely application for review by either the state or the defense.
State v. Odom, 2002-2932 at p. 1, 835 So.2d 1286 (per curiam).
Second, the state notes that although the trial court dismissed the then remaining indictment in its entirety in January 2005, the supreme court reversed that ruling, holding that the suspension of the limitation on the time to commence trial was extended by the appeals from the rulings on the defendant's motions to quash. The supreme court remanded, instructing that the state had one year from the date of its decision to hold the trial in this case.[9]
Third, the state contends that on remand, defense counsel filed a motion to set the case for trial within thirty days, and despite defense counsel's commitment at a status conference that he was ready to proceed to trial and the trial court's setting of a "motion cut off date of no more than sixty days," defense counsel violated that commitment and filed motions past that date.
The state further contends that on February 23, 2007, the trial court created lists of matters which needed to be resolved before the commencement of trial.[10] As to this assignment of error, defendant incorporates by reference the arguments he made in his motion to dismiss this appeal and in his appellate briefs.[11] Defendant acknowledges the state's primary argument that the supreme court's order on December 5, 2002,[12] and a subsequent order on November 3, 2006,[13] which referred to the 2002 order, stated the counts in the indictment should be tried together unless they were properly severed. Defendant contends that the trial court's reasons in the record show that rather than acting in flagrant disregard of the supreme court's *675 orders, the severance of the quashed counts was within the spirit of the supreme court's prior orders.
Defendant further contends that the state had several legal options available to address the impending situation, including filing a motion to continue and seeking review if the motion were denied; seeking review on the propriety of the severance and the order to proceed to trial on the remaining counts; filing a request with the trial court for a stay and if denied, seeking review. However, the defendant contends that rather than seek a legal remedy, the state chose to question the inherent power and authority of the court to enforce its order and refused to commence the trial.
We conclude the trial court retained jurisdiction over the four remaining counts after it quashed Counts 18, 19, and 20. In State v. Knott, 2005-2252 (La.5/5/06), 928 So.2d 534 (per curiam), the defendant claimed that the joinder of a sex crime that was untimely prosecuted prejudiced him by permitting the introduction of otherwise inadmissible evidence of another unrelated sex crime. The supreme court concluded that defendant's failure to raise the issue before trial deprived the trial court of the opportunity to correct the error in a timely fashion. Citing La.Code Crim. P. art. 495.1 and noting that a court may sever counts joined in a single proceeding on a showing of prejudice, the supreme court concluded the remedy would be "quashing the time-barred count and, in effect, severing that count from trial of the remaining charges." Knott, 2005-2252 at p. 2, 928 So.2d at 535.
Insofar as the state relies on the language of the supreme court's 2002 per curiam decision,[14] we find it important to note that the action was issued less than four months after the indictment was filed against defendant. In contrast, at the time of the trial court's ruling at issue herein, over five years had passed since the indictment was filed and not one of the counts had proceeded to trial. We believe that the interests of judicial economy (which the supreme court had stated in 2002 required that all of the then remaining counts be tried in a single proceeding unless properly severed) surely required in 2007 that the remaining counts proceed to trial. We also note that in 2002, the language of the supreme court's action addressed a ruling on a motion to continue, whereas the instant case presents the propriety of the trial court's ruling dismissing the remaining counts in the indictment because of the state's failure to commence a previously-scheduled trial.
Moreover, we note that the supreme court specifically stated that the interests of judicial economy require that all of the counts be tried together in a single proceeding "unless properly severed." State v. Odom, 2002-2932, 835 So.2d 1286. Herein, under Knott, the quashing of the counts would, in effect, be a severance of the remaining counts. In addition, the trial judge actually ruled that he was severing the quashed counts from the remaining counts. Thus, we believe Counts 18, 19, and 20 were properly severed.
Additionally, the trial court had the inherent authority to fashion a remedy to promote justice. In State v. Mims, 329 So.2d 686 (La.1976), the defendant was charged with receiving stolen things. The trial was continued once based on defendant's request, another time based on a joint motion of the state and defendant, and another time when defendant failed to appear for trial. The next time the matter was set for trial, the assistant district attorney gave the trial court firm assurances *676 he was ready for trial, and the defendant, who was represented by counsel, announced his readiness to proceed and waived his right to a jury trial. After the court addressed a motion in another case, the instant matter was taken up, and the state's witnesses were called. The district attorney discovered that two crucial witnesses were absent and informed the court that he was unable to proceed. The court ordered the prosecutor to proceed and requested he present his available witnesses. Long pauses intervened, during which neither party responded to the judge's demands or suggested an alternative route. Finally, the state requested a brief recess. The court denied the request and adjudged the defendant not guilty. The state sought review, and the supreme court granted writs. Mims, 329 So.2d at 687.
Finding the trial court had no authority to enter a judgment of not guilty under the circumstances, the supreme court remanded the case for further proceedings. In reversing the decision of the trial court, the supreme court noted the trial had not yet commenced when the lower court found defendant not guilty, and thus the trial court's action was inappropriate. Nevertheless, the court stated:
This is not to suggest, however, that the trial judge was powerless to act in the face of the State's stubborn resistance to his demands. Some action was required to break the stalemate; but we find that there were other alternatives available and that the facts warranted a less radical solution.
Mims, 329 So.2d at 688.
In offering alternative remedies, the court stated:
Where the law is silent, it is within the inherent authority of the court to fashion a remedy which will promote the orderly and expeditious administration of justice. La.C.Cr.P. art. 17; State v. Edwards, 287 So.2d 518 (La.1973). The court was not required to hold its business in abeyance on the chance that the missing witnesses would appear without further delay while two cases remained on the trial docket wherein the witnesses were available for trial. The court could have: ordered a continuance on its own motion; cited the recalcitrant assistant district attorney for contempt; or dismissed the prosecution without prejudice. We reach no conclusion as to the relative merits of these solutions, but find that any of them would have been preferable over the course of action chosen by the trial judge.
Mims, 329 So.2d at 688.
In State v. Jones, 396 So.2d 1272 (La. 1981), the defendant was charged with joined offenses that entitled him to a jury trial. At the outset of the trial, the prosecuting attorney announced that if the defendant insisted on a jury trial, he would move to sever the two counts. He also stated that he was prepared to try all counts. The defense attorney objected to the severance and stated that his client did not wish to waive his right to a jury trial. The judge overruled the defendant's objection and severed the offenses. In finding that the trial court exceeded its authority in granting the state's motion to sever and reversing the convictions, the supreme court noted that La.Code Crim. P. art. 495.1 allows a severance if it appears that either the defendant or the state is prejudiced by the joinder. The court further explained:
Prejudice in this context means detriment to one's legal rights or claims. Mere inconvenience or loss of strategic advantage caused by a jury trial does not constitute prejudice. Since the state's motion to sever was prompted by nothing other than its desire to avoid a *677 jury trial, the severance should not have been granted.
Jones, 396 So.2d at 1274.
Noting that La.Code Crim. P. art. 495.1 was based on the similarly worded federal rule, the supreme court cited United States v. Cappello, 209 F.Supp. 959 (E.D.N.Y.1962), in which the district court judge denied the government's motion to sever certain counts of an indictment that alleged offenses arising out of the same transactions as those included in other counts. Cappello concluded that a strong showing of prejudice by the government was necessary to allow it to sever offenses it had knowingly joined originally and held that the government's lack of preparedness on some counts did not override the defendant's interest in a speedy trial on all offenses arising out of the same act or transaction. The Cappello court further found that when the prosecution's interest in a severance is found an appropriate pursuit of a legitimate purpose, the motion is properly granted if defendant's interests are outweighed. Cappello, 209 F.Supp. at 960.
However, in Jones, the supreme court determined that the prosecution was prepared to try all counts consecutively and made no strong showing of prejudice. The two counts arose out of the same series of transactions, were both factually and legally interrelated, were properly joined, and were severed only in an attempt to avoid the inconvenience of impaneling a jury. The court concluded that depriving a defendant of a right to a jury trial is not a legitimate prosecutorial end and that any added inconvenience entailed in a jury trial does not constitute prejudice within the meaning of article 495.1. Because the trial court exceeded its authority in granting the severance, the defendant's convictions and sentences were reversed, and the matter was remanded. Jones, 396 So.2d at 1275.
In State v. Tucker, 482 So.2d 19, 20-21 (La.App. 1st Cir.1985), defendant was charged with driving while intoxicated and a moving violation arising from the same incident and arrest. Although not joined in the same indictment or information, the two matters were scheduled for trial together. Before the proceedings commenced, defendant moved for a jury trial because imprisonment on convictions of both charges could exceed six months. This motion was denied, and the trial judge, on his own motion, severed the charges and ordered trial to be held solely on the driving while intoxicated offense. Defendant sought review by this court, and writs were granted to consider the propriety of the trial court's denial of the jury trial. Finding that the record failed to show either the state or defendant was prejudiced by the two charges being tried at the same time, this court determined that the order to separate the counts for trial was erroneous, and defendant was denied his right to a jury trial. Thus, the case was remanded for a trial by jury on the offenses as charged.
Matters pertaining to the conduct of trial are within the sound discretion of the trial court. State v. Mack, 435 So.2d 557, 565 (La.App. 1st Cir.), writ denied. 440 So.2d 727 (La.1983); See La.Code Crim. P. art. 17. Although the state was aware the trial court intended to dismiss the remaining counts of the indictment and the court gave it time to exercise possible legal options to prevent the dismissal, the state failed to do so. We do not find that there was any abuse of the trial judge's broad discretion in the instant case, particularly in view of the trial court's inherent authority to fashion a remedy, the length of time this matter has been pending, the possible prejudice to defendant from the *678 extended delay in proceeding to trial, and the state's refusal to proceed to trial or to seek a speedy resolution to the stalemate.
Accordingly, this assignment of error lacks merit.

III. CONCLUSION
Accordingly, we reverse the trial court's ruling granting defendant's motion to quash Count 18, affirm the trial court's ruling granting defendant's motion to quash Counts 19 and 20 and the trial court's sua sponte ruling dismissing the remaining counts in the indictment without prejudice, and remand for further proceedings.
TRIAL COURT'S RULING GRANTING DEFENDANT'S MOTION TO QUASH COUNT 18 REVERSED; TRIAL COURT'S RULING GRANTING DEFENDANT'S MOTION TO QUASH COUNTS 19 AND 20 AND THE TRIAL COURT'S SUA SPONTE RULING DISMISSING THE REMAINING COUNTS IN THE INDICTMENT WITHOUT PREJUDICE AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurs.
I tend to agree in principle with the defendant's assertion:
Where there is specific, unambiguous law that applies to the specific conduct sought to be punished, the specific law controls over a more general law.
And I tend to agree in principle with the defendant's assertion:
It is fundamental that when the Legislature speaks clearly on an issue their statement must be accepted as controlling.
However, I cannot find any law to buttress those statements and defendant cites none.
NOTES
[1] A more complete procedural history can be found in State v. Odom, XXXX-XXXX (La.App. 1st Cir.3/29/06), 925 So.2d 776 (unpublished). The supreme court reversed the decision of this court, which had affirmed the trial court's ruling granting defendant's motion to quash the remaining counts on the basis that the state failed to commence the trial within the two year time limitation provided in La. Code Crim. P. art. 578(2). The supreme court reasoned that because the surviving counts alleged in the indictment remained joined in a single proceeding, the period of suspension applicable to Count 1 was applicable to all the remaining counts and the time limits had not expired for the state to bring the case to trial.
[2] Although the state was allowed to renumber the counts by a previous action of this court on supervisory review, State v. Odom, 2003-2842 (La.App. 1st Cir.3/22/04) (unpublished), we find that, for purposes of this appeal, the use of each count's original number avoids confusion.
[3] Defendant also filed a motion to quash Counts 1 and 2 on the basis of duplicity, which was set for hearing at the same time. The trial court denied this motion, and that ruling is not pertinent to this appeal.
[4] Louisiana Revised Statute 47:1642 was amended by 2003 La. Acts, No. 170, § 1.
[5] Neither the indictment nor the bill of particulars referenced La. R.S. 14:230(B)(2), so this prosecution theory was never properly before the trial court. See La.Code Crim. P. arts. 484, 485, 487, & 532(2), (4), & (5). It is a well-settled proposition that the state is limited in its proof to the facts recited in the bill of particulars. State v. Ford, 349 So.2d 300, 304 (La. 1977).
[6] Defendant filed a second motion to quash related to Counts 19 and 20 in the event that his argument in the first motion to quash the same counts failed. In his second motion, defendant sought to quash all charges in Counts 19 and 20 entirely, or in the alternative, to quash all charges in those counts that occurred prior to August 22, 1998. Defendant noted that the trial court previously quashed all allegations of bribes prior to August 22, 1996, on the basis that an indictment filed to prosecute offenses which occurred more than six years earlier was untimely. In the motion, he contends that since the only remaining bribery allegations occurred prior to August 15, 1994, the date the money laundering statute was enacted, there is no conduct alleged in Counts 19 and 20 left to prosecute. Alternatively, defendant argues that the allegations concerning pre-August 22, 1998 charges, in Counts 19 and 20 should be quashed. He contends that after accounting for all the quashed allegations of bribes related to the money laundering charges, the remaining allegations total only $15,100. Since La. R.S. 14:230 provides for a prison term "with or without hard labor" for funds ranging from $3,000 to 20,000, the time limit for instituting prosecution of Counts 19 and 20 was four years after they were committed. La.Code Crim. P. art. 572(A)(2). Thus, he contends any charges related to actions that occurred more than four years before the indictment was filed on August 22, 2002 should be quashed.

It is not clear to us from the transcript or the minute entry of the February 26, 2007 hearing if the trial court actually ruled on defendant's second motion to quash Counts 19 and 20. In its brief filed in this court, the state does not reference the motion or make any argument pertaining to a ruling on the motion. Nevertheless, since the trial court granted defendant's first motion to quash Counts 19 and 20, and this court affirms that ruling, the second motion to quash those same counts and any ruling on that motion is moot.
[7] The state urged and the transcript suggests that an order of appeal was signed by the trial court on February 26, 2007. The record contains an order signed on that date but all of the applicable order language is struck through, and the order does not grant an appeal. On February 29, 2008, this court denied defendant's motion to dismiss with an order directing;

This matter is remanded to the trial court for the limited purpose of signing an order granting the state's appeal in accordance with La.Code Crim. P. art. 915. The state filed a timely motion for appeal on March 20, 2007, which the trial court mistakenly denied as moot on April 5, 2007. Accordingly, the ruling denying the motion for appeal as moot is hereby vacated, and the COURT IS ORDERED to sign an order of appeal and cause the appellate record to be supplemented with the order no later than March 5, 2008. Defendant's motion to dismiss is otherwise denied.
State v. Odom, XXXX-XXXX (La.App. 1st Cir.2/29/08) (unpublished).
Thereafter, the trial court signed an order on March 3, 2008, that granted the state's "notice of Appeal and Motion to Set Appeal Dates filed March 20, 2007...." Accordingly, because the February 26, 2007 order does not contain order language granting an appeal, we find no merit in the state's argument that the trial court was divested of jurisdiction upon the signing of that order.
[8] There is no indication in the record that the prosecutors were held in contempt by the trial court.
[9] State v. Odom, XXXX-XXXX at pp. 4-5, 941 So.2d at 26-27 (per curiam).
[10] With the exception of a list of pending motions and objections that is obviously pertinent to this particular case, the lists are general in nature and appear to be part of the trial court's standard preparation in criminal jury trials,
[11] In the motion to dismiss, defendant argued that the trial court's dismissal of the indictment without prejudice was an acquittal from which there could be no appeal by the state, the order of appeal was null and void, and the dismissal without prejudice is not a final, appealable judgment. As stated earlier, this court denied the motion to dismiss with an order. State v. Odom, XXXX-XXXX.
[12] State v. Odom, 2002-2932, 835 So.2d 1286.
[13] State v. Odom, XXXX-XXXX at p. 4, 941 So.2d at 26.
[14] See State v. Odom, 2002-2932, 835 So.2d 1286.